CHARLES D. ADAMS, administrator, *vs.* EMILY D. JONES & others.

Middlesex.     March 19, 1900. — May 18, 1900.

Present: HOLMES, C. J., MORTON, LATHROP, HAMMOND, & LORING, JJ.

*Will — Brothers and Sisters and their Heirs — Limitation — Purchase.*

A testator gave by will all his estate to his wife for life, and " whatever remains at her decease shall be divided into two equal parts to be inherited and divided, the one moiety by my brothers and sisters and their heirs, and the other moiety by my said wife's brother and sisters and their heirs." *Held,* on the death of the widow, many years after that of her husband, that the words "and their heirs " were words of limitation, and that, subject to the widow's rights in the estate during her life, the fee in one moiety vested in the sisters and brother of the testator's wife who were living at the date of the will the day of the testator's death, as tenants in common, and that the other moiety vested in the brothers and sisters of the testator living at his death, as tenants in common.

PETITION IN EQUITY, by the administrator *de bonis non* with the will annexed of the estate of Oliver Bacon, for instructions as to the construction of his will as to the distribution of the personal estate in his hands, being the unexpended balance of

proceeds of real estate sold under license of the Probate Court by him as administrator to pay debts and charges of administration. The value of the real estate remaining unsold was $11,750. Hearing before *Knowlton,* J., who reserved the case for the consideration of the full court. The facts appear in the opinion.

*C. D. Adams, pro se,* read the papers in the case.

*S. Z. Bowman,* for certain heirs.

*E. F. Johnson,* for certain other heirs.

*J. M. Raymond,* for the heirs at law of Elizabeth Moore, a sister of the testator, submitted the case on a brief.

LORING, J.   Oliver Bacon died, leaving a will containing two bequests: the first was a bequest of " all my estate, both real and personal, wherever it may be situated, after all just claims against me or my estate are satisfied," to his wife for life ; and " whatever remains at her decease shall be divided into two equal parts to be inherited and divided, the one moiety by my brothers and sisters and their heirs, and the other moiety by my said wife's brother and sisters and their heirs."

The will was made in 1858, on the day on which the testator died, and his widow died twenty-nine years later, in 1887. When the will was made, he had four sisters and two brothers, and several nephews and nieces, the issue of two sisters and one brother who had previously died; there were also issue of one brother who disappeared about 1840, that is, about eighteen years before the will was made, and who has not since been heard from.

The children of the deceased brother, or brothers and sisters, claim that the class, to whom the remainder was given, consisted of the brothers and sisters living at the date of the will, the day of the testator's death, and of the heirs then living of the brothers and sisters who had previously died; and they rely on the case of *Huntress* v. *Place,* 137 Mass. 409, in support of this contention.   The bequest in *Huntress* v. *Place* was practically the same as the bequest in the case at bar; but the circumstances under which the will was made were different; in that case there was but one sister of the testator alive when he made his will, and it was held, under those circumstances, that the words " and their heirs " were not words of limitation,

but were words of purchase used to describe the members of the class, which were to take in remainder subject to the life estate in the testator's widow. This result was reached because some meaning had to be given to the use of the word " sisters " in the plural, in the place of " sister " in the singular, and on the authority of *Gowling* v. *Thompson,* L. R. 11 Eq. 366, *n.* The testator's bequest in *Gowling* v. *Thompson* was to " his 'brothers and sisters or their issue' in equal shares as tenants in common, ' and to their respective heirs, executors, adminis- trators, and assigns,' " and it was held that the children of a deceased sister took under the words " or their issue "; that those words would be construed to be part of the description of the class and not a substitutional gift, in case one of the class previously described died; that since the testator had but one sister, and he gave a bequest to his sisters or their issue, the word " sisters " must have been used in the plural in place of the singular, to indicate the stirps, and the words " or their issue " were a part of the description of the class; and for that reason the case did not come within *Christopherson* v. *Naylor,* 1 Mer. 320, which has been much relied upon by counsel for the surviving brothers and sisters in this case. But the question which arose in *Huntress* v. *Place,* and which arises in this case, is not the question which arose in *Christopherson* v. *Naylor* and *Gowling* v. *Thompson;* in those cases, the question was whether the words, which were confessedly words of purchase, consti- tuted a substitutional gift, or were words enlarging the de- scription of the class; in this case, as in *Huntress* v. *Place,* the question is whether the words are words of purchase or words of limitation.

We are of opinion that in the case at bar the words " and their heirs " are words of limitation, and that the gift cannot be construed to be a gift to the brothers and sisters of the testa- tor then living and to the heirs of brothers and sisters who had previously died.

The gift is a gift, in the first place, to " my brothers and sisters." The claimants were not brothers and sisters of the testator, but nephews and nieces, and therefore are not within the class described by those words. The rest of the gift is con- tained in the words " and their heirs "; grammatically, this

means "and the heirs of the testator's brothers and sisters already mentioned."

But apart from the conclusion to be reached by a strict grammatical construction of the words used, it is settled in this Commonwealth that in the case of a gift to A. B. and his heirs, the words " and his heirs " are words of limitation and not of purchase, even though the gift is a gift of personal property alone; and that such a gift of personal property is a gift to A. B. absolutely, and is not a gift to A. B. if living and to his heirs if he is dead. *Wood* v. *Seaver*, 158 Mass. 411. See also *Bryson* v. *Holbrook*, 159 Mass. 280; *Horton* v. *Earle*, 162 Mass. 448.

No reasonable distinction can be made between the construction of the words " and his heirs " added to a gift of personalty to a person by name, and the construction of those words when added to a gift to a class, such as brothers and sisters. If, in the first of these two cases, the words are not construed to have been inserted to prevent the legacy lapsing, in case the person named dies after the will is made, in the second case they cannot be construed to have been introduced to include the heirs of brothers and sisters who had previously died. Furthermore, it would be inconsistent with the rule of construction adopted in *Wood* v. *Seaver*, 158 Mass. 411, to hold that the words " and his heirs " in the case at bar are words of purchase. In *Wood* v. *Seaver*, the subject of the gift was personal property, and personal property only; in such a case, " and his heirs " are not properly words of limitation at all; they add nothing to the gift which is contained in the words " to A. B." In spite of that, they were held in *Wood* v. *Seaver* to be words of limitation. But in the case at bar, the words " to my brothers and sisters and their heirs " operated on real estate alone, though the gift in terms applied to " both real estate and personal " estate. In such a case, the addition of the words " and their heirs " is most proper to indicate that the persons described were to take a fee, though it is now provided by statute that the insertion of those words is not indispensable. Pub. Sts. c. 127, § 24. It is to be noticed that the words used by the testator are the words " and their heirs "; had the words been " or their heirs," and the only property been personal property, there would have been more

ground for the contention of these defendants. See *In re Porter's trust*, 4 K. & J. 188.

Counsel for these defendants have urged upon us very strenuously the opinion of Sir George Jessel, Master of the Rolls in *In re Smith's trusts*, 5 Ch. D. 497, 498, *n.*, in which he said: " The question is, whether I am to attribute to this testatrix the capricious intention that, if a brother died before her will, his children should not take, but that, if a brother died after her will, his children should take." That was perhaps a fair question to be considered in construing the words used in that case, which, taken in connection with other provisions of the will, were susceptible of two meanings. But when words have an ascertained meaning, and admit of a rational interpretation, and there is nothing in other portions of the will indicating that they were not used in their ordinary sense, a court cannot depart from that ordinary sense for the purpose of giving effect to what it may be guessed was the intention of the testator, because it would result in a fair distribution of the estate. If, in such a case, the testator did in fact intend to make an equal distribution, he has failed to express that intention in using the words he did use, and the power of the court goes no further than to ascertain the true meaning of the words used by him as he used them.

The only case in support of the claimant's intention which has come to our attention is that of *Brothers* v. *Cartwright*, 2 Jones, Eq. 113; but no reasons are given in the opinion in that case for adopting that conclusion. *Bond's appeal*, 31 Conn. 183, does not support the contention of these defendants; in that case it was held that the heirs of deceased children were included in the gift to " my children and their heirs," because of the addition of the words " respectively to be divided in equal shares between them."

The question whether William Bacon, who disappeared about 1840, or about eighteen years before the death of the testator, is to be treated as alive at the death of the testator or not is not now before the court.

We are of opinion that the administrator *de bonis non* with the will annexed is the person to make the distribution of the $1,631.75, with any interest which may have accrued thereon

in his hands, being "the unexpended balance of the proceeds of the sale of real estate of said Oliver Bacon sold to pay debts with interest thereon." That fund is, by virtue of Pub. Sts. c. 142, § 9, to be treated as real estate and should be paid over by the administrator to those entitled thereto. We are further of opinion that, subject to the widow's rights in the estate during her life, the fee in one moiety vested in the sisters and brother of the testator's wife who were living at the date of the will the day of the testator's death, as tenants in common, and that the other moiety vested in the brothers and sisters of the testator living at his death, as tenants in common.

The conclusion to which we have come disposes of the other questions which were stated in the bill. A decree must be entered by a single justice in accordance with this opinion.

*So ordered.*