GEORGE W. YATES and Others v. MINERVA SHERN and Others.[1]

July 12, 1901.

Nos. 12,688—(186).

## Will—Intention of Testator.

The cardinal rule in the construction of wills, to which all others must. bend, is that the intention of the testator expressed in the instrument shall prevail, provided that it be consistent with the rules of law. A court is bound to give that construction which will effectuate the intention, if such intention can be gathered from the terms of the will itself,. and the intention is to be gathered from everything contained within. the four corners of the instrument.

## Gift—Fluctuating Class.

In the absence of a contrary intent, words descriptive of the objects of a gift refer to the death of the testator, and not.to the date of his will or period of its execution. Thus, under a gift to fluctuating classes, as children or descendants, all who answer the description at the death of the testator are entitled, irrespectively of those to whom the description was applicable at the date of the will, but who subsequently died in the testator's lifetime.

## Child—Grandchild.

The words "child" or "children," in legal and common parlance, do not include "grandchild" or "grandchildren," or any others than the immediate descendants in the first degree of the person named as ancestor.

## Children of First Cousins.

A last will and testament contained the following residuary clause: "All the rest, residue, and remainder of my estate, real, personal, and mixed, of which I shall die seised, wheresoever situated, I give, devise, and bequeath to the same persons and in the same proportions as my said estate would descend under or according to the laws of the state of

[1] Reported in 86 N. W. 1004.

84 M.—11

Minnesota as existing at the time of my death,—the child or children of any deceased parent taking the share of such parent by right of representation." The words "child" or "children" construed in a case where, under the laws of the state (G. S. 1894, § 4471, subd. 6), the next of kin were first cousins, and surviving the deceased were children of first cousins who had previously died, and also grandchildren and great-grandchildren of living, as well as deceased, first cousins. *Held*, that the words "child" or "children" included and comprehended all of the immediate descendants, in the first degree, of first cousins deceased at the time of the death of the testator.

Lafayette Woodward died testate, a resident of Minneapolis, leaving property but no kin other than first cousins and descendants of first cousins. His will was duly proved in the probate court for Hennepin county and letters testamentary were issued to George W. Yates, named as executor. The executor having petitioned for a decree of partial distribution of the estate the probate court made its decree, construing the will and directing distribution accordingly. Whereupon Minerva Shern, and others, grandchildren and great-grandchildren of deceased first cousins of testator, who by the decree were denied any share in the estate, and John H. Woodward, and others, surviving first cousins of the testator, whose distributive shares were proportionately reduced by the inclusion in the decree of surviving children of deceased first cousins of testator, appealed to the district court for Hennepin county. The case was tried before Brooks, J., who made an order affirming the decree of the probate court. From orders denying their several motions for a new trial, both classes of appellants appealed to the supreme court. Affirmed, as to all appellants.

*James D. Shearer, William P. Roberts, Russell, Cray & Jamison, John J. McHale, Samuel M. Davis* and *Charles B. Holmes,* for appellants.

*Young & Waite, Wright & Matchan, Franklin H. Griggs, Harlan P. Roberts* and *Childs, Edgerton & Wickwire,* for respondents.

COLLINS, J.

This case comes before the court on appeal from the district court of Hennepin county, to which it had been removed from the

probate court. While the appeal calls for a general construction of a last will and testament, there is, in fact, but a single provision concerning which there is any controversy between the parties, and this is the residuary clause contained therein, as follows:

"All the rest, residue, and remainder of my estate, real, personal, and mixed, of which I shall die seised, wheresoever situated, I give, devise, and bequeath to the same persons and in the same proportions as my said estate would descend under or according to the laws of the state of Minnesota, as existing at the time of my death,—the child or children of any deceased parent taking the share of such parent by right of representation."

This will nominated a single executor, and it was provided therein that he should serve without bonds.

The testator, at the time of his decease, was about seventy-eight years of age, a resident of the city of Minneapolis, the owner of a large amount of property, real and personal, the greater part of which was situated in the state of Minnesota. Some lands, however, were located in other states. He had been feeble for several weeks prior to the execution of this instrument, and deceased three days afterwards. He died without having been married, leaving surviving him no lawful children or other issue, nor father, mother, brother, sister, nor the child or children of any brother or sister, nor any grandfather or grandmother, nor any uncle or aunt. The next of kin left by him surviving were children of deceased paternal and maternal uncles and aunts, to wit, first cousins of the testator, twenty in number, all of whom were living when he executed the will. Several first cousins, once removed, survived the testator, as well as several first cousins twice and thrice removed, whose parents and grandparents had previously deceased. These persons were children, grandchildren, and great-grandchildren of testator's first cousins.

In the probate court, and also in the district court, the construction placed upon this will was that the first cousins living at the time of the testator's decease were entitled share and share alike, as next of kin, and also that first cousins once removed, children of first cousins who had died prior to the making of the will, were entitled, per stirpes, to like shares. Both courts held that grand-

children and great-grandchildren were not entitled. Some of the first cousins appealed to this court, and appeals were also taken in behalf of the grandchildren and great-grandchildren. It is apparent that, had the testator omitted from this instrument what may be called the "hyphenated clause," "the child or children of any deceased parent taking the share of such parent by right of representation," the estate would have descended in exact accordance with the provisions of G. S. 1894, § 4471, subd. 6, a provision which governs under like circumstances in the absence of a will. The whole difficulty arises out of the fact that to this plain and unmistakable language there was added the perplexing words now before us for construction.

Evidently the court below held that this clause made an original gift or devise, and enlarged that which preceded it, by extending the benefactions of the testator so as to include first cousins once removed; that is, children of the first cousins who had died prior to the day the will was made.

It is the contention of the appealing first cousins that this was error, and that, as no first cousins died after the will was made and prior to the death of the testator, the entire property descended in equal shares to the first cousins living when the testator died and the will took effect, twenty in number, as before stated. They insist that as all of the testator's first cousins who were alive when the will was made survived him, the clause in question was ineffectual, and must be disregarded and dropped out of the instrument. The contention of the grandchildren and great-grandchildren is that the words "child" or "children," as used in this hyphenated clause, meant and included all grandchildren and great-grandchildren of first cousins deceased when the testator died. Their claim is that these words "child" or "children" must be construed precisely as if instead thereof the words "issue" or "descendants" had been written in the will.

Therefore the question raised by one appeal is, does this will comprehend and include children of first cousins who had deceased prior to the time it was made? That presented by the other is whether grandchildren and great-grandchildren of such first cous-

ins are comprehended and included in the term, "child or children of any deceased parent."

The rule to be applied in the construction of wills is stated in Re Swenson's Estate, 55 Minn. 300, 308, 56 N. W. 1115, as follows:

"The cardinal rule in the construction of wills, to which all others must bend, is that the intention of the testator expressed in the instrument shall prevail, provided that it be consistent with the rules of law. A court is bound to give that construction which will effectuate the intention, if such intention can be gathered from the terms of the will itself; and the intention is to be gathered from everything contained within the four corners of the instrument."

It was also said that, in ascertaining the intention of the testator, the court is authorized to put itself in the position occupied by him at the time the will was executed, and, taking in view the then existing circumstances, to discover, from that standpoint, what was intended by the testator when using the language demanding construction. Of course, no violence must be done to that used, nor must well-settled rules of law be disregarded when ascertaining the intent. While our attention has been called to a number of authorities, it is conceded that none are exactly in point. It can be said of some of them that they have a bearing one way or the other,—nothing more. Certain it is that if anything can be gained from an examination of the cited cases their tendency is in support of the construction adopted below.

Taking up the claim of the first cousins, it is obvious that some effect must be given the words which were inserted in this will, and by use of which this difficulty has arisen. Was there anything about the circumstances of the making of the will, or the language used, which seems to imply that the testator intended to limit his beneficiaries to first cousins living at the time it was made? He expressly provided that in the distribution of his estate the law in force when his death occurred should govern, and not the law as it existed when the will was made.

Had there been a radical change in subdivision 6 subsequent to the day the will was executed and prior to the day he died, there would have been equally as radical a change in the channels into

which the testator's property would have turned, not only as to the class first mentioned, but also as to those included in the hyphenated clause. There was, in the reference to the laws of the state existing when death came, a clear and definite expression as to time, and it quite clearly indicates that Mr. Woodward had in mind and was speaking with respect to the condition of things at his decease, not as to the then condition. He proposed to accept the law of descent as it might be when he died, and also to include among the objects of his bounty the immediate lineal representatives of such deceased kinsmen as would have taken had the latter been living at the time of his death.

There is not a single circumstance or fact which points towards any reason why he should discriminate between the children of such relatives as had preceded him across the dark river and the children of those who, although living on the day he made the will, might not survive the testator. Apparently all children of deceased next of kin were quite as much in his mind, and as much the primary objects of his last will and testament, as were the next of kin who might survive him, and no distinction was intended to be made between the children of the dead and the living. This seems unquestionable when we take into consideration the physical condition of the testator at the time; that he had been very sick for some weeks; was seventy-eight years of age, and could not naturally expect to recover from what proved, three days later, to be his final illness. It would seem almost incredible that under such circumstances he had in mind that one or more of his next of kin might die before his own decease, and that their children ought to be provided for to the exclusion of children of equally as near relatives. The natural thing for us to infer, under all of the circumstances, when endeavoring to ascertain the true intention of the testator, is that when he referred to any deceased parent he meant those of his next of kin who might be dead at the time of his decease. This is also in consonance with the well-settled rule that, "In the absence of a contrary intent, words descriptive of the objects of a gift refer to the death of the testator, and not to the date of the will or period of execution. Thus, under a gift to fluctuating classes,

as children or descendants, all who answer the description at the death of the testator are entitled, irrespectively of those to whom the description was applicable at the date of the will, but who subsequently died in the testator's lifetime." 29 Am. & Eng. Enc. 355.

The children referred to in this will were of a fluctuating class. They might change in number, and surely all of the thirty-eight cousins completely answer to a description of every one of the class provided for. This cannot be said if we should adopt the construction asked for by the appealing first cousins; for, to adopt their view, we should have to cut down the clause in question. In fact, if we should interpret it as demanded, it would be given no effect whatsoever. No death occurred among the first of kin—the first cousins—after the will was drawn and prior to the death of Mr. Woodward, nor could the latter, under the circumstances, have anticipated that there might be deaths in his lifetime.

As to the contention of counsel for the grandchildren and great-grandchildren of deceased first cousins, very little need be said. They urge that a proper interpretation of that provision of the will which extended its benefits beyond the statutory rule of inheritance must include the descendants living of deceased first cousins, no matter how remote. Attempt is thus made to read into the will the words "grandchildren" and "great-grandchildren," and to appropriate to them the shares of their deceased grandparents and great-grandparents by right of representation. Although a clause in the will extends its benefits to persons not within the statutory rule, the words used are limited, and restrict the benefactions to the "child or children" of deceased parents. These devises to the "child or children" of deceased next of kin were original devises, as before stated, and were not of a substitutionary nature.

The uniform rule seems to be that, in the absence of a clear intention to the contrary, expressed in the instrument itself, the words "child" or "children," when used in a will, cannot be construed as including "grandchild" or "grandchildren." The word "children" must be understood in wills in the primary sense and simple signification, when that can be done, and always so when

there are any persons in existence at the date of the will, or before the devise or legacy takes effect, answering such meaning of the word. The words "child" or "children," in legal and common parlance, do not include grandchild or grandchildren, or any others than the immediate descendants in the first degree of the person named as ancestor. Palmer v. Horn, 20 Hun, 70, 84 N. Y. 517; Mowatt v. Carow, 7 Paige, 328; 5 Am. & Eng. Enc. (2d Ed.) p. 1085, notes.

Order affirmed as to all appellants.