F. L. ANDERSON and H. A. STEARNS as Executors of the Will of JAMES B. WILSON, deceased, Appellees, v. WILLIAM M. WILSON and others, Appellants, and JOHN H. WILSON and others, Appellees.

**Wills:** CONSTRUCTION. In the construction of a will the language used will be given effect according to approved usage, unless the context or the peculiar circumstances under which the instru-

ment was executed make it reasonably certain that the language employed was intended to be used in a more restricted or enlarged sense. In this case the will provided that one-half of the estate should go to the testator's half-brothers equally, and, in case any of them were deceased at the time of testator's death his share should go to his children equally. *Held,* that the child of a deceased half-brother was entitled to the share of the estate which would have gone to his father, although his father was dead at the time of the execution of the will, there being nothing to show a contrary intent of the testator.

Same. An heir will not be disinherited on the strength of a doubtful construction of a will, nor unless such is the expressed declaration or necessary implication arising from the language of the testator.

*Appeal from Linn District Court.*—HON. W. N. TREICHLER, Judge.

FRIDAY, MAY 17, 1912.

ACTION in equity to obtain a construction of the will of James B. Wilson, deceased. From the findings and decree entered therein, two of the defendants, William M. Wilson and James R. Hanna, appeal.—*Reversed.*

*Clark & Clark* for appellants.

*F. L. Anderson* for appellees.

WEAVER, J.—James B. Wilson died, testate, December 28, 1908, leaving surviving him neither widow nor issue. His only living heirs at law were William W. Wilson and Sarah E. Leo, his brother and sister of the full blood, John H. Wilson and A. C. Woody, his brothers of the half blood, and William M. Wilson, the son of a brother of the half blood, who died some years before the making of the will in controversy. William M. Wilson having assigned his interest under the will to James R. Hanna, the latter is made a party to the proceeding.

The will, which has been duly probated, is (omitting the merely formal parts) as follows:

1st. I give and bequeath to G. A. Rigby, now in my employ, providing he is in my employ at the time of my death, the sum of twenty-five hundred dollars.

2nd. I give, devise and bequeath to my sister, Mrs. Sarah E. Leo of Cedar Rapids, Iowa, all the proceeds of all life insurance policies held by me at the time of my death upon my life.

3rd. If my brother, William W. Wilson, survives me, then I give, devise and bequeath to my sister, Sarah E. Leo, in trust for the use and benefit of my brother, William W. Wilson, the east fourteen (14) feet and six inches of lot seven (7) and the west seven (7) feet six inches of lot eight (8) in block (13) in the original town now city of Marion, in Linn county, Iowa, including the building and fixtures and the counters, shelvings, show cases, radiators, soda fountain and safe located therein, subject to and charged with any incumbrance thereon at the time of my death; and I direct that the rents and income from said property after the payment of taxes, insurance, interest on incumbrances and expenses of repairs shall be paid monthly to my said brother, William W. Wilson, during his natural life; and I authorize and empower said trustee or her successor as may be appointed by the court in case of her demise, to sell and dispose of said property at any time during such trusteeship if deemed proper by such trustee, and in case of such sale then I direct that the proceeds thereof, after the payment of incumbrances, shall be held by such trustee in trust for the use and benefit of my said brother, William W. Wilson, he to be paid the interest thereon during his natural life, and at his death said property or the proceeds thereof in case it has been sold, shall go, a one-half interest to my sister, Sarah E. Leo, and the other one-half interest to my brothers of the half blood equally and in case any are then deceased his share to go to his children equally. But in case my said brother, William W. Wilson, does not survive me, then I give, devise and bequeath said property, a one-half interest to my sister, Sarah E. Leo, and the other one-half interest to my brothers of the half blood equally

and in case any are then deceased his share to go to his children equally.

4th. All the rest, residue and remainder of my estate, real and personal, wheresoever situate, I direct shall be sold by my executors and after the payment of the legacy, costs of administration and lawful debts, be divided equally between my brothers and sister of the full and half blood equally, but if any be then deceased such share to go to his or her children equally.

The one question presented by this controversy is whether the son of the predeceased half-brother of the testator is a devisee under the provisions of the third and fourth paragraphs of the will above quoted. It is the contention of the executors that the benefits provided for in said paragraphs are given exclusively to the brother and sister of the full blood and the two brothers of the half blood, who were living at the date of the will, and that the son of the predeceased half-brother is given nothing. This position is contested by William M. Wilson and his assignee, claiming that under a proper construction of said devise he is given a share therein in equal proportions with John H. Wilson and A. C. Woody, the surviving half-brothers of the testator. The trial court held, with the executors, that William M. Wilson is not a beneficiary under said will, and, having entered a decree accordingly, the said William M. Wilson and James R. Hanna appeal.

This case has been twice argued to this court, and counsel on either side have collected the authorities and presented their views with marked thoroughness of preparation. The question presented is a debatable one, and reasons having much of plausibility and force may be advanced in support of either conclusion; but, after mature deliberation, we find ourselves unable to agree to the correctness of the decree below.

It is a universally accepted rule of the construction of wills that the words of the testator will be given effect

according to the approved usage of the language, unless
the context or the peculiar circumstances
under which the instrument was executed
make it reasonably certain that the words were employed
by him in some other or more restricted or more enlarged
sense. The third clause of this will, dealing with certain
specific property, provides that, upon the happening of
a certain event, the one-half thereof shall go "to my
brothers of the half blood equally and in case any are
then deceased his share to go to his children equally."
Providing for another contingency in the same clause he
repeats that the one-half interest shall go "to my brothers
of the half blood equally and in case any are then deceased
his share to go to his children equally." In the fourth
paragraph, he provides for the division of all the residue
of his estate, not otherwise disposed of, to be divided
between his brothers and sisters of the full blood and half
blood equally; "but if any be then deceased such share to
go to his or her children equally." The will, of course,
speaks from the death of the testator; and, having been
duly probated, and the estate being ready for distribution,
we must look to its provisions for the designation of the
persons entitled to share therein. But two devisees are
there mentioned by name—William W. Wilson and Sarah
E. Leo. The remaining devisees are mentioned only by
what we may call class description, and they are "my brothers
of the half blood and in case any be then deceased his
share to go to his children equally." The appellant William
M. Wilson was, at the date of the testator's death, the sur-
viving son of a deceased half-brother, and therefore within
the literal description by which the testator designated the
beneficiaries of his gift. Upon what sound principle of con-
struction shall the court say the testator did not mean pre-
cisely what he said? Let us suppose that when the will
became effective all the half-brothers were dead; each leav-
ing one or more surviving children. Now, if all these

1. WILLS: construction.

children appear at the distribution, each proving his identity as the child of a deceased half-brother, and therefore by the same title and description within the class designated by the will, by what authority shall the executors draw a line of distinction between the child of one half-brother and the child of another, admitting the one as a devisee and excluding the other from any share in the estate? It is the exclusive province of the testator to designate the class of persons to whom his gift is made, and, having designated a class, each member thereof takes by a title no less complete than he would had he been mentioned by his individual name.

But the proposition of the appellees is, as we understand it, that the context of the words of the devise, taken in connection with the admitted fact that the father of the appellant was already dead at the date of the will, requires us to restrict its application to the half-brothers living at that date and the children of such half-brothers as may die after the date of the will, but before the testator's death. It is argued that our decision in *Downing v. Nicholson,* 115 Iowa, 493, is in point upon this proposition, and governs the construction of this will. An examination of that precedent will disclose that it is not a parallel case with the one at the bar; and neither its reasoning nor conclusion is controlling here. The devise there in question was to "all my nephews and nieces." There was no attempt by the testator to enlarge the class to include the children of a deceased nephew or niece. The claimants did not claim any right to take as devisees under the will, but by statutory substitution. Code, section 3281. In this case, the appellant makes no claim by virtue of the statute, but asserts that the devise, of which he claims the benefit, is made directly to him as one of a class which the testator has designated and described. The distinction between the claim which was adjudicated in the *Nicholson* case and the one we have here

to pass upon is quite obvious. At the risk of wearisome repetition, we recall once more the words of the will, "to my brothers of the half blood equally and in case any are then deceased, his share to go to his children equally." This is not a designation of two classes to take in succession, but of a single class, the membership of which is composed of his half-brothers and the children of such half-brothers as may "them [at the testator's death] be deceased." Any party to this controversy who takes anything under such devise takes it because he is therein pointed out as the intended beneficiary, and not because the statute or other rule of law substitutes him in the place of or instead of a deceased devisee. We are not, therefore, called upon to consider what would have been the effect, had the devise been simply to the testator's brothers of the half blood. It may here be remarked, however, that the opinion in the *Nicholson* case makes no attempt to lay down an inflexible rule, applicable alike to all controversies of that nature, but says, "We do not favor any arbitrary rule with reference to this matter, preferring to leave each case to be determined upon its own peculiar facts."

We are further cited by appellee to *Dunn v. Cory,* 56 N. J. Eq. 507 (39 Atl. 368) and *Tiffany v. Emmet,* 24 R. I. 411 (53 Atl. 281), as supporting the ruling of the trial court. In the *Tiffany* case, the principal question in dispute was whether the word "children" could properly be construed to include grandchildren, and has little, if any, bearing upon the question we are here considering. In the *Dunn* case, decided by a New Jersey court, the will provided gifts for certain persons, and then directed the disposition of such gifts in case of the death of any of said "legatees" before the will became effective. In holding that the word "legatees" did not include persons dead at the date of the will, the court recognized the very rule for which the appellant in this case is contending, saying: "If the language of the clause had been, 'in case

of the death of any of the above named children before me, the legacy shall not lapse but shall go to their lawful issue,' I should think that, on the authority of the case of *Outcalt v. Outcalt,* 42 N. J. Eq. 500 (8 Atl. 532), the descendants of those dying before the date of the will would have taken, on the ground that the gift would have been an independent gift, and not substitutionary."

The *Outcalt* case here referred to is valuable for its quite thorough citation and discussion of pertinent authorities. In the will there being construed, after providing certain gifts, the testator directed that after his wife's death the residue of his estate should be divided "among my several children, share and share alike, and in the event of any of my said children dying before my said wife and leaving issue then surviving, then such issue shall be entitled to receive their parent's share." The testator left five surviving children and two grandchildren, the children of a predeceased son. It was held that these grandchildren took as devisees under the will. In so holding, the court cites with approval the following cases:

*Potter's Trust,* L. R. 8 Eq. 52, where a devise to nephews and nieces, children of a deceased sister, "and in case of the death of any of my said nephews and nieces leaving issue, then I direct that such issue shall take the share that his or her or their deceased parent would have taken if living." This gift, which is quite an apt paraphrase of the one in the instant case, was held to include within its benefits the children of nephews and nieces dying before the date of the will and of others dying after that date.

*Adams v. Adams,* L. R. 14 Eq. 246, where it was held that, under a similar devise to brothers and sisters, the children of a brother, who had been dead fifteen years at the date of the will, were held to be within the class of devisees.

*Chapman's Will,* 32 Beav. 382, where a gift was made

to nephews and nieces, children of a deceased sister, who should be living at the testator's death, and providing that, in case any of them should die in his lifetime, the child or children of the deceased should stand in the parent's place, it was held that the words, "shall die in my lifetime," were equivalent to the expression, "shall be dead at the time of my death," and that the child of a niece dying before the will was made was a beneficiary under it. A similar holding is found in *Sibley's Trusts,* 5 Ch. Div. 494. To the same effect, see *Long v. Labor,* 8 Pa. 229.

Discussing the rule of these authorities, the New Jersey court, *supra,* says that they are based upon the principle that, "wherever there is a gift to a class, with a gift by substitution to the issue or children of those who shall die, the children take what their parents would have taken, if living, at the testator's death, without regard to the question whether the parent died before or after the date of the will, unless a contrary intention is shown." "But," adds the Chancellor, "in these cases no new rule was necessary; for there was an independent gift to the issue. It is said by Mr. Theobald that if the original gift is to a class, with a direction that the issue of any dying in the testator's lifetime, or before the period of distribution, shall take the share which their parents would have been entitled to, if then living, the issue of those dead at the date of the will will be admitted, as the direction amounts to an independent gift."

The following devises to a class or classes have been held to include the children of deceased persons who, had they been living at the date of the will, would admittedly have come within its designation. Estate to be "equally divided among my children who may be living at the time of such distribution *and in case any of them should be deceased,* their heirs to receive in equal parts such share as their parents would be entitled to receive were they living." *Long v. Labor,* 8 Pa. 229. To be equally divided

"among my surviving children and the *issue of such of them as may have died* leaving issue to take the share their parents would have taken if living." *Teed v. Morton*, 60 N. Y. 502. To be "equally divided among my brothers and sisters and their heirs, *the children of any that* may be dead to have the shares of their deceased parents." *Richey v. Johnson*, 30 Ohio St. 288. "To my children and their heirs respectively to be divided in equal shares between them." *Bond's Case*, 31 Conn. 183. After a life estate to a sister, Clarissa, "I give to the children of the said Clarissa *and their representatives,* if deceased." *Bronson v. Phelps*, 58 Vt. 612 (5 Atl. 552). Devise after life estate to widow, "to be divided among my several children share and share alike and *in the event of any of my said children dying before my said wife and 'leaving issue* them surviving, then such issue shall take their parents' share." *Outcalt v. Outcalt, supra.*

Where a residuary devise was made to a class, consisting of those persons to whom the estate would descend by law in the absence of a will, with the provision that the child or children of any deceased parent should take the share of such person by right of representation, and where it appeared that the testator's nearest kin were first cousins, it was held that the child of a first cousin, who died before the will was made was a devisee. *Woodward's Estate*, 84 Minn. 161 (86 N. W. 1004). "To my brothers and sisters and their heirs." *Huntress v. Place*, 137 Mass. 409.

It should be said in this connection, however, that in Massachusetts, in a gift to a certain class of persons "and their heirs," the words "their heirs" are ordinarily construed as words of limitation, and not of purchase. *Adams v. Jones*, 176 Mass. 185, (57 N. E. 362).

Discussing the same question we have before us, the court, in *Loring v. Thomas*, 1 Dr. & Sm. 497, say that, while the testator may restrict his bounty to persons liv-

ing at the date of the will and their children, and exclude the children of those deceased at that time, yet, "if he uses language so wide and general as to be not less applicable to a predeceased child than to a child living at the date of the will, then the direction as to such representation and substitution must be held to embrace both."

In *Pimel v. Betjemann,* 183 N. Y. 194 (76 N. E. 157, 2 L. R. A. (N. S.) 580, 5 Ann. Cas. 239), cited by appellee, the will did not expressly include the children of deceased persons among its beneficiaries, and the decision turns upon the question of statutory substitution; thus bringing that question in a class with our own *Nicholson* case, and not in point upon this appeal. The same may be said of most of the cases relied upon to support the decree below.

We close this reference to specific cases with a few suggestive words, quoted from the Vermont court (*Bronson v. Phelps, supra*), and the New York court, (*Crawford's* case, 113 N. Y. 366 (21 N. E. 142). In the first of these cases, the court says, in language pertinently applicable to the instant case:

The testator knew of the death of Sophia Wilbur and Caroline Romane at the time he made his will, and that they had left children surviving them; and it is very evident that, if he had intended to exclude their issue from sharing in the bequests, he would not have used the general language adopted in making it. If he had intended to limit the gift to the children of Clarissa living at the date of his will and their particular representatives, he would have used words apt to such a limitation, and made the bequest to the children living at the time, and to their representatives of such of the *then* living children as should decease before the time of enjoyment. The general words of the bequest must receive their ordinary interpretation, and be used in their ordinary sense and meaning, unless some other is clearly indicated. . . . Without any studied effort to restrict its meaning, the language used indicated that the testator contemplated all of the children,

and both future and past deaths of such children. We think the bequest clearly falls within the rule of a gift to such a class as shall be living at a stated time or their issue, and is therefore to be construed as introducing the issue of such of the class as at the time stated for the enjoyment shall be dead, and this by way of addition to the class, and not by way of substitution; and we are of the opinion that the bequest is an original, substantive gift to the children of Clarissa living at the time of her decease and the issue of such of them as shall be then dead, leaving issue, and that such issue are entitled to share in the bequest as primary legatees.

In the other case, the court, in holding devise of this nature to be primary, and not by way of substitution, say that it comes within the rule of those cases.

In which the words following a gift to a class are introduced in form or in effect by way of proviso, and are construed as adding to the class who are to participate, defined in the prior clause, another clause, viz., the issue of deceased persons of such class, at whatever time they may have died, whether before or after the date of the will; such issue constituting another and distinct class by way of original and substantive limitation. In cases of this kind, it is held that the issue take as primary legatees, and not as representatives, by way of substitution to interests given in the prior clause. . . . The diversity of opinion arises in many cases, I apprehend, from the mental attitude in which the particular judge approaches the consideration of such a question; that is, whether he leans to a strict and literal construction of the language of a will, or to a liberal and broad construction, in aid of the probable intention of the testator. The tendency, however, is towards the inclusion of issue of predeceased children. The cases are collected by Jarman (2 Jar. 771 et seq.), and he states that even where there is no original and independent gift to the issue, but the claim is founded on a clause apparently of mere substitution, the court anxiously lays hold of slight expressions as a ground for avoiding a construction which, in all probability, defeats the actual intention, by excluding the issue of a deceased child from participation in a family provision.

Turning from the precedents to the language of the will, and to the circumstances under which it was executed, we find nothing to indicate any intention to exclude the son of the deceased half-brother from a share in the estate. The testator was leaving neither wife nor lineal descendant surviving him. His legal heirs were his brother and sister of the full blood, his two brothers of the half blood, and the son of a deceased brother of the half blood. There is no indication in the will or in the record that he had any reason or motive to exclude any one of them from sharing in his bounty. On the contrary, it would seem that he made a studious effort to be both generous and just in his treatment of all. Naturally, perhaps, he seems to have thought that, as children of the same father and mother, he ought to show some preference for his brother and sister of the full blood; and this he does by giving to his sister his life insurance, and making the brother the life beneficiary of a trust in the use of certain real estate. Subject to this trust, he then divides the described real estate into two equal parts, one for the benefit of his sister, and the other for the joint benefit of his brothers of the half blood, and, if any be then deceased, the share which they would have taken, if living, to pass to their children. This being done, he provides for an equal distribution, per capita, of the residue to the sister of the full blood and brothers of the half blood, with the same clause in favor of the children of any who may then be deceased. The appellant is within the literal description of the beneficiaries of the will; and, as already said, there is nothing to suggest any reason for drawing a distinction between persons, all of whom are equally within the express terms of the devise. It is said in argument that, if the testator had meant to give anything to appellant, it was easy to say so, and his failure to name him is sufficient evidence of his intention to exclude him. The obvious answer to this objection is that the testator *did* name him, not, of course, by his

family appellation, but by class description, just as precisely and as definitely as he designated any of his heirs of the half blood. None of them is mentioned by his family name. The only manner in which any of them come in for a share under the will is by proof or admission of the fact that he is within the relationship by which the class is limited; and the appellant, it must be conceded, answers that test as fully as do any of the appellees, unless we are to find that, for some reason not apparent on the face of the will, the testator meant something more or less than he said. Moreover, if the argument implied in the objection is of any value, it is equally, if not more, suggestive when turned in the other direction. If, having used a general description which includes the child of the deceased half-brother, the testator had so desired to modify or restrict it as to exclude him, why did he not do so in terms? And is not the very fact that he left the general language unmodified a good reason for concluding that he desired it to be given force accordingly? This argument was thought sound in *Woodward's* case, 84 Minn. 161 (86 N. W. 1004), where the court says: "Therefore the question raised by the appeal is, Does this will include children of first cousins who had deceased prior to the time it was made? . . . Was there anything about the circumstances or the making of the will or the language used which seemed to imply that the testator intended to limit his beneficiaries to first cousins living at the time the will was made? . . . There is not a single circumstance or fact which points toward any reason why he should discriminate between the children of such relatives as had preceded him across the dark river, and the children of those who, although living on the day he made the will, might not survive the testator."

Again in the *Bronson* case, *supra,* the Vermont court makes the same point, saying that when the testator made his will he knew of the death of certain persons who, if

living, would have come within the class being provided for, and adds: "If he had intended to exclude their issue from sharing in the bequest, he would not have used the general language adopted by him in making it. If he had intended to limit the gift to the children living at the date of the will and their particular representatives, he would have used words apt to such limitation." It is also worth considering whether, if the testator had intended to limit this devise to his living half-brothers (two only in number) and to *their* children, he would have used the word "any" as it appears in the phrase, "if *any* be then deceased." The more natural and more appropriate phrase, if but two. persons were then in his mind, would have been, "if *either* be then deceased." This might not be particularly persuasive, if there were anything else appearing in the will or in the record to suggest an intention on the part of the testator to restrict his bounty to these two persons; but there is nothing, unless we indulge in a bald presumption, based on nothing but the fact that the third half-brother was then dead; and, under such circumstances, we may properly give some weight to this choice of words.

Finally, if we are to indulge in any presumption at all in interpreting the will, it should be done with due regard to that well-established rule that an heir at law shall not be disinherited on the strength of a doubtful construction of a will. The authorities go even farther than this, and say that an heir is not to be disinherited, except by express declaration or devise, or by necessary implication from the testator's language. 1 Jarman on Wills, 465; 2 Jarman on Wills, 840-843; *Bond's Appeal,* 31 Conn. 183; *Reck's Appeal,* 78 Pa. 432; Rood on Wills, section 430; *Bowker v. Bowker,* 148 Mass. 198 (19 N. E. 213). It is not to be denied that cases may be found seemingly opposed to the conclusion here announced; but, as we have already mentioned, many of them turn upon the application of

2. SAME.

some statute, and others involve devises of substantially different character. In so far as our views may differ from those expressed in the remaining exceptional cases, we think they are in harmony with the better and the greater weight of the authorities.

For the reasons stated, the decree of the district court is reversed, and the cause remanded for the entry of a decree in harmony with this opinion.—*Reversed.*