In the Matter of the ESTATE OF Mark L. AREND, Decedent.

No. C8-84-2121.

Court of Appeals of Minnesota.

Aug. 20, 1985.

Solly Robins, St. Paul, for appellant Leona J. Arend.

Martin H. Fisk, St. Paul, for respondent Norwest Bank of St. Paul.

Leo H. Dehler, St. Paul, for respondent Michael Arend.

James S. Simonson, Minneapolis, for respondent Rosemary Kuny.

Hubert H. Humphrey, III, State Atty. Gen., Jean M. Bolar, Sp. Asst. Atty. Gen., St. Paul, for amicus curiae Attorney General of the State of Minnesota.

Heard, considered and decided by SEDGWICK, P.J., and WOZNIAK and RANDALL, JJ.

## OPINION

SEDGWICK, Judge.

This appeal is from an order construing a will filed on November 9, 1984 and is authorized by Minn.Stat. § 525.71(12). The trial court determined that evidence of surrounding circumstances was admissible to show decedent's testamentary intent. The court also determined that the ERTA Transitional Rule limited that portion of the decedent's estate passing to his widow to an amount equal to fifty percent of the adjusted gross estate. We affirm.

## FACTS

Mark L. Arend died testate on January 10, 1984. Surviving him are his second wife appellant Leona J. Arend and four children by a previous marriage: respondents Michael Arend, Rosemary Kuny, Thomas Arend and Susan Hope.

Decedent was the founder and a principal officer of Rayette Corporation, now known as Faberge. He executed one will and three codicils during his lifetime. As originally executed on February 13, 1973, the decedent's will included the following provisions: ARTICLE I directed the executor to pay medical and funeral expenses before

satisfaction of certain gifts to appellant. ARTICLE IV made a gift to appellant of a portion of the residue:

I give, devise and bequeath fifty percent (50%) of the residue and remainder of my estate to my wife, LEONA J. AREND.

ARTICLE VI of the will left the other half of the residue of decedent's estate in trust for his children. ARTICLE X named respondent Norwest Bank of St. Paul as executor and either decedent's son Michael or his daughter Rosemary as co-executor. The decedent's first codicil, dated April 25, 1977, amended ARTICLE X to name respondent Norwest as sole executor.

Decedent's second codicil, dated September 1, 1977, made two changes. First, it amended ARTICLE I to direct that all claims, debts, medical and funeral expenses be paid directly out of the residuary portion passing to the children. Second, it amended ARTICLE IV in its entirety, giving to his wife the greater of " * * * fifty percent (50%) of the residue and remainder of my estate * * * " or "an amount equal to the maximum marital deduction allowable to my estate under the provisions of the United States Internal Revenue Code * * * ," less amounts passing to his wife outside of the will which qualify for the marital deduction.

The third codicil executed on September 16, 1980 expressly revoked the second codicil with changes made to both payment of claims against the estate and that portion of the residue designated for his wife. The third codicil directed that expenses of the estate be paid out of the residuary fund passing to both the children and his wife. It also made a single gift to her of property:

* * * equal in amount to: (i) the maximum marital deduction allowable to my estate under Section 2056 of the United States Internal Revenue Code of 1954 in effect at the time of my death (now the greater of $250,000 or one-half of my adjusted estate * * * )

At the time the third codicil was executed in 1980 the maximum marital deduction applicable to decedent's estate was one-half the "adjusted gross estate" as defined by the Code. In September of 1981 Section 2056 of the Internal Revenue Code was amended to provide an unlimited marital deduction for estates of decedents dying after 1981. The amendment to Section 2056 also included a "Transitional Rule" to cover those wills executed between the then existing law and the new amendment. Under the Transitional Rule the smaller pre-1981 marital deduction would apply to wills executed before the date the amendment was effective unless certain conditions were met.

Decedent's will, first and third codicils were admitted to probate by order of the probate court in February, 1984. That order also confirmed the appointment of respondent Norwest as personal representative of decedent's estate. On March 1, 1984 Norwest petitioned the probate court for an order construing the will because it was unable to determine from the third codicil what portion of decedent's estate would pass to appellant. Cross-petitions were filed by the wife and four children.

The probate court found the will and third codicil ambiguous and admitted extrinsic evidence regarding testator's intent. It also found the Transitional Rule applicable. Accordingly, it construed the will and third codicil to give 50% of the decedent's estate to appellant.

## ISSUES

1. Did the trial court err in admitting extrinsic evidence of the decedent's testamentary intent?

2. Was testimony of the attorney who drafted the will and third codicil regarding his conversations with the decedent about construction of those instruments barred by either the Minnesota Code of Professional Responsibility or the Dead Man's Statute?

3. Did the trial court err in its application of the ERTA Transitional Rule to decedent's will and third codicil?

## ANALYSIS

1. Appellant claims the trial court erred by admitting extrinsic evidence regarding the testator's intent. The purpose of the court in construing a will is to ascertain the actual intention of the testator as it appears from a full and complete consideration of the entire will (and its codicils) when read in light of the surrounding circumstances at the time of the execution of the will. *In re Ordean's Will*, 195 Minn. 120, 125, 261 N.W. 706, 708 (1935); 4 *Page on Wills* 30.6 (4th ed. 1961). If there is no ambiguity or equivocation when the will is read as a whole, extrinsic evidence is not admissible. *In re Hartman's Will*, 347 N.W.2d 480, 483 (Minn.1984). However, it is equally clear that if ambiguity does exist in the will extrinsic evidence may be admitted to resolve the ambiguity.

A will may be patently ambiguous: that is, the language of the will, on its face, may suggest more than one interpretation. *See* 4 *Page on Wills*, 32.7 at 255 (4th ed. 1961). A will may also contain a latent ambiguity:. although on its face the language of the will appears clear, surrounding circumstances reveal more than one construction. *See id.* In Minnesota, courts will admit extrinsic evidence to resolve both patent and latent ambiguities. *In re Tweedie's Will*, 234 Minn. 444, 48 N.W.2d 657 (1951).

The probate court found that passage by Congress of the unlimited marital deduction after execution of the will and codicils created a latent ambiguity in the will. Appellant contends this finding does not fit within the categories of latent ambiguities recognized by Minnesota law. In *In re Pope's Estate*, 91 Minn. 299, 97 N.W. 1046, 1048 (1904), the court stated:

> A latent ambiguity in a will, which may be removed by extrinsic evidence, may arise (1) either when it names a person as the object of a gift, or a thing as a subject of it, and there are two persons or things that answer such name or description; or (2) when the will contains a misdescription of the object or subject, as where there is no person or thing in existence, or, if in existence, the person is not the one intended, or the thing does not belong to the testator.

*In re Pope's Estate*, 91 Minn. 299, 97 N.W. 1046, 1048 (1904), quoting from *Patch v. White*, 117 U.S. 210, 217, 6 S.Ct. 617, 620, 29 L.Ed. 860 (1886).

We agree with the trial court that a latent ambiguity existed. The unexpected change in the marital deduction left, if appellant's view is correct, the decedent's children with nothing under the will. One half his estate, some $3,000,000 less one-half debts and expenses, bequeathed to his children would no longer exist. Extrinsic evidence was properly admitted. Even if no ambiguity existed, evidence of surrounding circumstances is always admissible to determine a testator's intent. *Yates v. Shern*, 84 Minn. 161, 165, 86 N.W. 1004, 1006 (1901). In construing a will, the court is to put itself in the position of the testator at the time the will was executed, *In re Hartman's Will*, 347 N.W.2d 480, 483 (Minn.1984). To do so, the court may admit testimony regarding testator's family and testator's relationship with his family. *Id.*

The probate court properly admitted evidence concerning decedent's relationship with both appellant and his children. Examination of the surrounding circumstances when decedent executed his will and third codicil reveal that the harsh result of disinheriting his children was not intended.

After execution of the will in 1973 marital difficulties developed between the decedent and appellant. In 1976, the decedent filed a petition for dissolution of their marriage. The parties lived separately from 1976 until they reconciled in 1977. The attorney for decedent testified that as a condition of reconciliation appellant would receive a greater portion of decedent's estate. He further testified that decedent was reluctant to execute the second codicil because it gave appellant more than she would have received under his original will. The second codicil executed in 1977 incorporated the reconciliation conditions by potentially increasing her gift to an amount

equal to the greater of 50% of the residue or the maximum marital deduction, and also by satisfying claims of the estate from the residue passing to the children.

From the time of the reconciliation in 1977 until the decedent's death, the relationship between his second wife and his four children was strained. In 1977 she forbid them from entering their father's home. She enforced that order throughout the balance of the decedent's life. Despite appellant's attitude, the decedent maintained a friendly relationship with all of his children, and continued to visit them at their homes and at other locations.

In 1980, decedent directed his attorney, Matthew Levitt, to draft a third codicil. Levitt testified that decedent wanted to give appellant only 50% of the adjusted gross estate and to reduce the share of sizeable claims against the estate borne by the residue passing to the children. Decedent told Levitt he did not want appellant to know about execution of the third codicil. He felt it would be impossible to execute the codicil in Minnesota without her knowledge, and directed Levitt to take the codicil to New York City for the meeting of the Board of Directors of Faberge. The decedent executed his third codicil in New York.

The third codicil effectively reduced appellant's share of the estate. First, it directed that she and the children share the expenses and claims of the estate and second, it limited her devise to 50% of the adjusted gross estate, rather then the greater of 50% or the maximum marital deduction allowable.

2. Appellant contends provisions of the Minnesota Code of Professional Responsibility as well as the Dead Man's Statute excludes the decedent's attorney's testimony because he is also a partner in the law firm which represents the personal representative of the decedent's estate.

Prohibitions contained in the Professional Responsibility Code against attorneys acting as witnesses are not exclusionary rules. The only sanction they pro-vide is discipline of the attorney who violates them. *See* Minn.Stat., Code of Professional Responsibility, Preliminary Statement (1984). Even if viewed as an exclusionary rule, DR 5–102, upon which appellant relies, is not applicable. DR 5–102 provides that an attorney and his firm must disqualify themselves "if, after undertaking employment in contemplated or pending litigation, a lawyer learns * * * that he or a lawyer in his firm ought to be called as a witness *on behalf of his client* * * *" (emphasis supplied). Here Levitt did not appear as a witness "on behalf of his client," respondent Norwest. He was called as a witness by the attorneys for the four children.

Appellant also argues that the "Dead Man's Statute" excludes Levitt's testimony. The Dead Man's Statute, Minn. Stat. § 595.04, is superseded by Minnesota Rules of Evidence 616 which permits testimony from any witness regardless of whether that witness is a party or has an interest in the litigation.

3. Appellant argues the court erred in applying the Transitional Rule. Following enactment of the Tax Reform Act of 1976, the maximum marital deduction allowable to any estate under Section 2056 of the Code was limited to the greater of $250,000 or 50% of the adjusted gross estate. Section 403(a) of the Economic Recovery Tax Act of 1981, Publ. No. 97–34, 95 Stat. 172 (1981) ("ERTA") removed all limits on the allowable marital deduction for certain estates of decedents dying after 1981.

Section 403(c)(3) of ERTA (the "Transitional Rule") restricts the applicability of this unlimited marital deduction. If the estate of a decedent dying after 1981 is subject to the Transitional Rule, the maximum marital deduction is limited to the amount allowable under the 1976 Act: the greater of $250,000 or 50% of the adjusted gross estate.

The Transitional Rule applies to all estates which satisfy the following four conditions:

(A) the decedent dies after December 31, 1981,

(B) by reason of the death of the decedent property passes from the decedent or is acquired from the decedent under a will executed before the date which is 30 days after the date of the enactment of this Act, or a trust created before such date, which contains a formula expressly providing that the spouse is to receive the maximum amount of property qualifying for the marital deduction allowable by Federal law,

(C) the formula referred to in subparagraph (B) was not amended to refer specifically to an unlimited marital deduction at any time after the date which is 30 days after the date of enactment of this Act, and before the death of the decedent, and

(D) the State does not enact a statute applicable to such estate which construes this type of formula as referring to the marital deduction allowable by Federal law as amended by [ERTA].

■ All parties agree that decedent's estate satisfies the three requirements set forth in paragraphs (A), (C), and (D) of the Transitional Rule. First, the decedent died on January 10, 1984. Second, the third codicil was never amended to refer specifically to an unlimited marital deduction. Finally, the State of Minnesota has not enacted a statute relating to the availability of the unlimited marital deduction.

At issue is the interpretation given to paragraph (B). Respondents maintain condition (B) of the Transitional Rule is satisfied because the third codicil provides that property passes to the decedent's wife under the type of maximum marital deduction formula described in the paragraph. Appellant argues that if the formula specified in (B) is further qualified by the language *in effect at the testator's death*, the ERTA Transitional Rule does not apply and the unlimited marital deduction should control the disposition of the estate.

In support of this argument, appellant cites IRS private rulings and a proposed treasury regulation which permit favorable tax treatment, i.e., permit application of the unlimited marital deduction, if the will contains language indicating that the testator intended the formula clause to be governed by the law in effect at the time of his death.

■ The purpose of the Transitional Rule was to prevent the disruption of estate plans where the testator, although using a maximum marital deduction formula clause, did not intend to give his entire estate to his spouse:

> [T]he congress was concerned that many testators, although using the formula clause, may not have wanted to pass assets valued at more than the greater of $250,000 or one-half the adjusted gross estate * * * to the spouse a result which might otherwise occur because of the enactment of an unlimited marital deduction.

General Explanation of the Economic Recovery Tax Act of 1981, H.R. 4242, P.L. 97–34: Prepared by the Staff of the Joint Committee Taxation, 97th Cong., 1st Sess. 239 (1981).

The fact that the treasury department construes paragraph (B) in favor of the taxpayers is certainly an important benefit to taxpayers where there is no challenge to the will. But where a testator's intent must be determined because of an ambiguity in the will, evidence of testator's relationships with his family are properly considered.

### DECISION

The trial court properly admitted evidence of surrounding circumstances to determine decedent's testamentary intent. Neither the Dead Man's Statute nor the Minnesota Code of Professional Responsibility bar testimony by an attorney who drafted the will concerning his conversations with decedent about construction of the instrument. The trial court did not err in applying the ERTA Transitional Rule to decedent's will and third codicil.

Affirmed.