In the Matter of the Trusts Created in and by the Last Will and Testament of Robert HARTMAN, a.k.a. Robert E. Hartman, Deceased.

No. C6–83–3.

Supreme Court of Minnesota.

April 13, 1984.

Jerome B. Pederson, William J. Brody, Minneapolis, for Karl Malischke.

Lehan J. Ryan, William P. Studer, Thomas E. Lund, St. Paul, for beneficiaries.

McNeil V. Seymour, Jr., St. Paul, for trustees.

PETERSON, Justice.

Erwin J. Schmid and First Trust Company of St. Paul, the trustees, instituted this action by filing a petition for instructions as to the final distribution of the residuary trust created by the will of Robert Hartman (testator). Respondents, testator's great grandchildren, sought a construction whereby they would receive the entire remainder of the trust estate to the exclusion of appellant, Karl Malischke.[1] Malischke argued that the language in question was not ambiguous, and, if followed, the trust estate would be shared by him and the great grandchildren. The case centers on the meaning of the words "another child, or children, of my said daughter." The trial judge held that the disputed language in the will was ambiguous in light of the facts and circumstances existing when the will was executed. He further held that testator intended to benefit his lineal descendants and that, therefore, the trust vested in his lineal descendants living at the death of his daughter. Thus, the trial judge ordered that each of testator's great grandchildren, Robert Schmid, Jr., Thomas J. Schmid, and Marie Ann Faricy, respondents herein, receive a one-third vested interest in the trust. We reverse.

The issues on appeal relate to the admissibility of certain evidence, the trial judge's interpretation of the settlor's intent, and the interpretation of the secondary distribution provision.

Testator executed his will in 1937, at age 79. The will was admitted to probate in Ramsey County after his death on March 18, 1941.

Testator's wife died in 1932. At the time of the execution of his will, testator's only child, Myrtle Schmid, was 37. She was married to Erwin Schmid. They had one child, Robert Schmid, who was 11 years old in 1937. Testator and his daughter and family lived in Minneapolis-St. Paul.

Testator had a younger brother, E.T. Hartman, age 72 in 1937, a retired Army

---

1. The individual trustee, Erwin Schmid, who, together with the First Trust Company of St. Paul, sought instructions as to the distribution of the trust, is the grandfather of respondents. He went to First Trust Company to persuade them to petition for instructions in this case.

officer who lived in Palo Alto, California. He never had children. Testator also had a sister, Agnes Malischke, age 67 in 1937, who lived in Wauwatosa, Wisconsin. She had one son, Karl, age 27 in 1937, appellant herein.

When testator died in 1941, his estate was worth about $176,000. His will gave $1,000 to his sister-in-law, Meta Vogel; $2,000 to his brother, E.T. Hartman; and $1,000 to his sister, Agnes Malischke. By codicils he gave $500 to his housekeeper and $500 to his laundress. Following these bequests, the will established a $10,000 trust for his grandson, Robert Schmid. The trust income was to be used for Robert's education, maintenance, and support until he was age 21, and thereafter the income was to be distributed directly to him. When he reached age 30, he was to receive the trust principal. The residue of the estate of approximately $140,000 became a trust for the benefit of testator's daughter, Myrtle Schmid, who was to receive the trust income during her lifetime. Upon Myrtle's death, $10,000 was to be distributed to Myrtle's husband, Erwin Schmid. The balance of the trust was to be distributed to Myrtle's son, Robert, if he survived her; if he had not then reached age 30, it was to be poured over to the $10,000 trust created for him.

Myrtle Schmid died in 1982. Her son, Robert Schmid, died in 1973, survived by three children, respondents herein. Colonel E.T. Hartman, Agnes Malischke, and Meta Vogel and their spouses predeceased Myrtle Schmid.

Because Robert Schmid predeceased his mother, Article V of the will became operative. Article V of testator's will provided:

If my said grandson, ROBERT ERWIN SCHMID, be not living at the time of the termination of said trust, and there should be *another child, or children, of my said daughter, MYRTLE SCHMID,* living at that time, then said Trustees shall hold said trust fund and estate for the benefit of such child, or children, share or share alike, until they each become, respectively, thirty (30) years of age, at which time the said trust shall terminate, and said trust fund and estate be assigned to such child, or children, respectively, in equal shares, the income in the meantime to be expended for their education, maintenance and support by said Trustees until they each become of legal age, respectively, and thereafter the income, or their respective part or portion thereof, shall be paid directly to them.

*If no child, or children, of my said daughter, MYRTLE SCHMID,* be living at the time of her death, then and in that event said trust shall cease and terminate, and said Trustees shall assign, convey and transfer said trust fund and estate as follows: To my brother, COL. E.T. HARTMAN, Five Thousand ($5,000.00) Dollars; to my sister, AGNES MALISCHKE, the sum of Three Thousand ($3,000.00) Dollars; to my nephew, KARL MALISCHKE, the sum of One Thousand ($1,000.00) Dollars; and to my sister-in-law, META VOGEL, the sum of Five Thousand ($5,000.00) Dollars; and in addition to the foregoing, the balance of said trust fund and estate shall be *divided pro rata among said persons in equal shares.* In the event that any of said parties be not living at that time, then his, or her, share (excepting in the case of META VOGEL or LOUIS VOGEL), shall go to such persons as at that time would be entitled to their estate according to the laws of the State of Minnesota, relating to intestacy, but in the event that said META VOGEL be not living at that time, then her share shall go to said LOUIS VOGEL, and if neither of them be then living, then said legacy, or legacies, shall lapse and shall be divided among the foregoing parties as hereinbefore provided.

(emphasis added).

■ 1. The purpose of the court in construing a will is to ascertain the actual intention of the testator as it appears from a full and complete consideration of the entire will when read in light of the surrounding circumstances at the time of the

execution of the will. *In re Ordean's Will,* 195 Minn. 120, 125, 261 N.W. 706, 708 (1935); 4 Page on Wills § 30.6 (1961). If there is no ambiguity or equivocation when the will is read as a whole, however, extrinsic evidence is not admissible. *In re Silverson's Will,* 214 Minn. 313, 317, 8 N.W.2d 21, 23 (1943). The parties' briefs raise the issue of the distinction between surrounding circumstances and extrinsic evidence.

Over Malischke's continuing objection, the testimony of Erwin Schmid was admitted. Schmid testified that his wife, Myrtle, was always in very delicate health, having had a bout with tuberculosis, gallbladder problems, and other minor illnesses. He stated that he and his wife did not plan on having any more children in 1937, and that he thought testator was aware of their intention.[2] He further testified that his wife and son were close to testator, visiting him often in his last years. He described testator's relationship with his sister, Agnes, as "close but not very extensive" in view of the fact that they lived in different cities.

Stating that his objection to extrinsic evidence continued, Malischke nevertheless testified to his relationship and his mother's relationship with testator. His testimony indicated that his family and testator's family were together on a number of important family occasions in both Wisconsin and Minnesota, as well as some general visits. Karl was remembered each year with a Christmas gift from testator and received gifts on several other important occasions.

■ The testimony of Erwin Schmid and Karl Malischke was properly admissible as evidence of surrounding circumstances. In construing a will, the court is to put itself in the position of the testator at the time the will was executed. *In re Swenson's Estate,* 55 Minn. 300, 308–09, 56 N.W. 1115, 1116 (1893). To do so, the court must be aware of the facts about the testator's family, such as those described by Schmid and Malischke. "Among the surrounding facts and circumstances which the court will consider * * * are the character and the occupation of testator; the amount, the extent and the condition of testator's property; the number, identity and the like of testator's family and of other natural objects of his bounty; and testator's relation to the beneficiaries and to the natural objects of his bounty." 4 Page on Wills § 30.8 (1961).

■ The trial judge also admitted drafts of three prior wills of testator offered by the great grandchildren for the purpose of showing that "the prior wills interchange [the words] issue and children to the point of ambiguity." Drafts of prior wills are a qualitatively different kind of evidence than surrounding circumstances at the time of the will's execution. What a testator may or may not have said 4 to 7 years earlier in a written declaration is not a surrounding circumstance. A change from a prior draft to the operative will may reveal nothing more than a change of intent. In any event, prior wills are inadmissible absent a prior finding of ambiguity. Only the language of the current will is to be given legal effect, not language used in a prior draft.

■ The trial judge did not admit the prior wills after finding that the operative will was ambiguous but decided that the will was ambiguous after he admitted the prior wills. We hold that the prior wills were not properly admitted. Our resolution of this case, however, renders the admission of the prior wills harmless error.

2. The trial judge found that testator's will was poorly drafted and its dispositive provisions were ambiguous. A central finding of fact supporting this conclusion was that testator "was aware" that his daughter did not intend to have more chil-

---

**2.** The relevant testimony of Erwin Schmid is as follows:

 Q. At that time, in 1937, did you and your wife contemplate having any additional children?

 A. No, sir.

 Q. Was this known to [testator], to your knowledge?

 A. Oh, I think so, yes.

dren. Given this fact,[3] the evidence of testator's close relationship with his daughter and grandson, and the will as a whole, the trial judge concluded that the language "child, or children, of my said daughter" included grandchildren, because testator intended to benefit his lineal descendants over his collateral relatives.

The specific issue before us then is this: Given the fact that testator was aware that his daughter did not intend to have more children, was the trial judge's decision on the meaning of "another child, or children, of my said daughter" correct?

■ "In construing a will, the cardinal rule is that the testator's intention is to be gathered from the language of the will itself. * * * Conversely, intention which the testator may have had, but did not express in his will, cannot be considered." *In re Cosgrave's Will*, 225 Minn. 443, 448–49, 31 N.W.2d 20, 25 (1948). Though the court is to consider surrounding circumstances, it cannot speculate what the testator would have done with knowledge of events subsequent to his or her death and thereby rewrite the will. *Id.*

■ The great grandchildren argue that since testator "was aware" that his daughter did not plan to have additional children, the provision for distribution to "another child, or children" is ambiguous. They further support their argument by pointing out that the will contains several "drafting errors" that taint the reliability of the will. "Drafting errors," however, do not give the court the freedom to disregard the plain meaning of the language used by testator.

The great grandchildren also argue that the significant trusts for his child and grandchild, the evidence of his close relationship to them, and the absence of a provision for his nephew support a conclusion that testator intended to benefit his lineal descendants rather than his collateral relatives. Thus, they argue that the trial judge's conclusion that "child, or children" includes all lineal descendants and that, therefore, the great grandchildren should take to the exclusion of Karl Malischke should be affirmed.

■ The weakness with the great grandchildren's argument is that it draws inferences that are not compelled by the facts. If the court is to determine the testator's intent based on the language of the will in light of the surrounding circumstances, it should draw those inferences from the surrounding circumstances that most closely reflect the plain meaning of the language. Even if testator was aware that his daughter did not plan to have more children, he could have drafted the disputed provision to provide for children if she did, in fact, have more children. There is no evidence that at age 37 Myrtle Schmid was incapable of bearing or adopting another child. Furthermore, the evidence of testator's close relationship with his daughter and grandson and his generous provision for them in his will requires only a conclusion that he wanted to provide for his lineal descendants of the first and second generation who were known to him during his life. It does not necessarily follow that he wanted to provide for more distant generations who were not yet born rather than living collateral relatives.

Malischke argues that there is no ambiguity in the language "another child, or children, of my said daughter." "The primary or ordinary meaning of the word 'nephew,' 'niece,' 'child' does not include 'grandnephew' or 'grandniece' or 'grandchild.'" *In re Kittson's Estate*, 177 Minn. 469, 471, 225 N.W. 439, 440 (1929). In *Kittson*, the testator left a portion of his estate to the surviving children of his deceased brother. His nephew, the son of his deceased brother, died before the will was executed, leaving a son and a daughter. There was only one surviving child of the deceased brother, the testator's niece. Yet, the testator made a class gift to the "*neph-*

---

**3.** Although the testimony supporting this finding is weak, *see supra* note 2, we find it unnecessary to disturb it.

*ews* and nieces" (emphasis added). The court found that to make sense of a class gift when the testator knew his deceased brother could not possibly have more children, the words "nephews and nieces" would be construed to include "grandnieces and grandnephews."

*Kittson* is distinguishable from the present case. In *Kittson* the court was construing language referring to additional children of a deceased person. In this case, the disputed language refers to other children of a living daughter—Myrtle, a 37-year-old woman, who was not incapable of bearing additional children. The case law from other jurisdictions is clear that as a general rule "children" does not include "grandchildren." *See, e.g., Wright v. Poudre Valley National Bank of Fort Collins,* 153 Colo. 255, 385 P.2d 412, 414 (1963); *In re Work's Estate,* 168 Kan. 539, 213 P.2d 998 (1950). In *In re Villalonga's Will,* 6 N.Y.2d 477, 190 N.Y.S.2d 372, 160 N.E.2d 850 (Ct.App.1959), a case factually similar to the instant case, the interpretation of the word "children" was determinative of whether a great granddaughter or the children of a nephew would take under the will. The court held that the word "children" was not ambiguous and that the will did not disclose an unmistakable intent that it include grandchildren. *Id.* at 481, 190 N.Y.S.2d at 377, 160 N.E.2d at 854. The court noted that the language of the will should not be strained or given an unusual meaning in order to reach a result favorable to the issue of a deceased child. *Id.* at 482, 190 N.Y.S.2d at 378, 160 N.E.2d at 854.

Two observations about the will in the instant case support a conclusion that the disputed language should be given its plain meaning. The will uses the language *"another* child, or children." "Another" contemplates an additional child like Robert, that is, an immediate offspring of Myrtle. Second, if Robert Schmid died before age 30 but after having children, the distribution plan would have operated in a fashion that is contrary to the conclusion that testator was concerned about his lineal descendants. If Robert had children but died

before age 30, his trust fund would not have gone to the benefit of his children but would have been poured over into the trust for his mother, Myrtle.

 Based on the plain meaning of the language, and the fact that neither the provisions of the will as a whole nor the surrounding circumstances warrant a contrary conclusion, we hold that testator intended "child" to mean descendants of the first degree only. The judgment of the trial court is accordingly reversed.

3. There were no first generation descendants of Myrtle Schmid living at the time of her death. Thus, the second paragraph of Article V determines the final distribution of the trust corpus.

Colonel E.T. Hartman, Agnes Malischke, and Meta and Louis Vogel predeceased Myrtle Schmid. Therefore, the specific dollar gifts will be distributed as follows: The $5,000 gift to E.T. Hartman will be divided —$2,500 to Karl Malischke and $2,500 to the great grandchildren, *see* Minn.Stat. § 525.16(4)(d) (1982); the $3,000 gift to Agnes Malischke will be distributed to Karl Malischke, *see* Minn.Stat. § 525.16(4)(a) (1982); and the $1,000 gift will be distributed to Karl Malischke. Under the language of the paragraph, the $5,000 gift to Meta Vogel has lapsed.

The balance of the trust will be distributed to the heirs at law of E.T. Hartman, the heirs at law of Agnes Malischke, and Karl Malischke "pro rata among said persons in equal shares." One possible construction of this language would be to divide the balance of the trust into three equal shares representing the division which would have taken place had all three of the named persons survived. Thereafter, one such share would be distributed to Karl Malischke outright. He would also receive a full share as the sole heir-at-law of his mother, Agnes Malischke. The remaining share to E.T. Hartman would be divided according to the laws of intestacy. Karl Malischke would thus receive one-half of E.T. Hartman's share and the great grand-

children would divide equally the remaining half of such share.

 We reject this construction, however, because it gives no meaning to the term "pro rata." Language used by a testator should not be set aside as meaningless, but, if possible, effect must be given to every word and provision. *In re Crosby's Will*, 224 Minn. 173, 180, 28 N.W.2d 175, 179 (1947). Thus, the words "pro rata" and "equal shares" should be given effect. The first proposed construction cannot be followed unless we ignore the term "pro rata."

The other more acceptable construction, which we adopt, is to require that the balance of the trust estate be divided into equal shares and that those shares be distributed pro rata. This division will be accomplished based upon the distribution of the specific dollar gifts. In other words, since a total of $9,000 is to be distributed specifically, the residue will be divided into nine equal shares and those equal shares will then be distributed pro rata as follows: five equal shares to the heirs-at-law of E.T. Hartman, one-half of the five shares will be distributed to Karl Malischke and one-half of the five shares will be distributed to the great grandchildren, *see* Minn.Stat. § 525.16(4)(d) (1982); three equal shares to the sole heir at law of Agnes Malischke, Karl Malischke, *see* Minn.Stat. § 525.16(4)(a) (1982); and one equal share to Karl Malischke.[4]

Reversed.

---

4. The additional construction contained in section 3 of this opinion was not addressed by the trial court. Because of the trial court's disposition of the main issue, it did not have occasion to consider the issue decided in this section. The two constructions were suggested in Malischke's brief, but the great grandchildren did not address the issue. We assume that they would have little reason to dispute our construction because, for them, it is the more favorable of the alternatives. That being so, judicial economy has prompted us to resolve the otherwise unresolved issue.