In the Matter of the Trust Under Agreement dated May 13, 1950 by and between Karl T. WIEDEMANN, Trustor, and Earl Paulson and First National Bank of Minneapolis, Trustees.

No. C5-84-1332.

Court of Appeals of Minnesota.

Nov. 20, 1984.

Lehan J. Ryan, Thomas E. Lund, St. Paul, for Vogel.

Stephen R. Litman, Lowell V. Stortz, Leonard, Street & Deinard, Minneapolis, for Crocker Nat. Bank.

William J. Berens, Dorsey & Whitney, Minneapolis, for 1st Nat. Bank of Minneapolis.

Heard, considered, and decided by LANSING, P.J., and HUSPENI and CRIPPEN, JJ.

## OPINION

HUSPENI, Judge.

Trustee petitioned the district court on stipulated facts to construe trust provisions regarding final distribution. The trial court held that the remainder of the trust should be distributed to the trustor's great-grandchild, excluding a surviving grandson. The grandson appeals. We reverse.

### FACTS

On May 12, 1950, Karl Wiedemann executed a trust agreement, with First National Bank of Minneapolis as trustee. The trust was part of a divorce settlement with his wife, Edna Wiedemann. They had one daughter, Edna J. Vogel.

Under the trust, Edna Wiedemann received a life estate, followed by a life estate for her daughter. Edna Vogel had a limited testamentary power to dispose of the entire estate among her spouse, issue, and certain foundations. However, Edna Vogel predeceased her mother, and did not exercise her power of appointment. She was survived by two children, Richard Vogel (appellant) and Adelle Vogel Crane. As a result, each living child of Edna Vogel received an equal income interest in the trust after Edna Wiedemann's death, and was entitled to an equivalent share of the trust principal when he or she attained age thirty.

Richard received his share of the trust estate upon his thirtieth birthday. However, Adelle did not survive her 29th year. She was survived by one son, William Crane (respondent by his guardian, Crocker National Bank). Thus, the 6th article of

the trust is applicable, covering "any contingency not herein provided for." Under Article 6, "all such undistributed principal shall be paid over to the heirs at law of [Edna Vogel]." Literally read, that means one-half to Richard and one-half to William. William argues this is an unreasonable or absurd result. He contends Article 5, which gives Edna Vogel's children an equal income interest and equal principal share at age thirty, shows Karl Wiedemann's intent was to benefit his grandchildren equally, and that Adelle does not benefit equally unless her child receives her share. The trustee bank petitioned the court on stipulated facts for instructions. The trial court agreed with William. Richard appeals.

### ISSUE

Whether the trial court erred in determining that construction of the literal language of the trust instrument gives rise to an unreasonable or absurd result?

### ANALYSIS

The relevant trust provisions follow:

Fourth: CONTINGENT DISTRIBUTION OF PRINCIPAL BY DAUGHTER'S WILL. In the event said daughter of the Trustor is not then living, then said principal shall be paid over, discharged from this Trust to the persons and in the manner and proportions fixed by the exercise of the following limited power of appointment, as may be provided in the Last Will and Testament of said daughter of the Trustor; said daughter is given power to appoint the remaining principal of the trust fund within a class consisting of her husband, her children and issue, natural or adopted, the spouses of such children and issue, and such religious, charitable or educational corporations and foundations, no part of the net earnings of which inures to the benefit of any private stockholder or individual, and no substantial part of the activities of which is carrying on propaganda or otherwise attempting to influence legislation, as said daughter of the Trustor may designate.

Fifth: CONTINGENT DISTRIBUTION OF PRINCIPAL IF NO WILL. In the event that the daughter of the trustor does not live until final distribution of principal is made to her hereunder, and fails to exercise said power of appointment by a valid Will, then the remaining principal of the Trust Fund shall continue to be held in Trust for the equal benefit of any surviving child or children of Edna J. Vogel, daughter of the Trustor. The net income therefrom shall be paid equally to or for the use of said child or children until age 30, at which time an equal distributive share of principal shall be paid over, discharged from this Trust to such child or children.

Sixth: ULTIMATE CONTINGENT DISTRIBUTION OF PRINCIPAL. If under any contingency not herein provided for, there remains any undistributed principal in the Trust Fund for which there is no provision for distribution, then all such undistributed principal shall be paid over to the heirs at law of said daughter of Trustor as determined by the intestate law of the State of Minnesota then in force at the time distribution of such principal is required to be made hereunder. For the purposes of such distribution of principal as provided in this Sixth subdivision, the Trustor, father of said daughter, shall not be considered as an heir at law in any respect.

■ The trustor's intent, as expressed in the language of the trust, dominates construction. *In re Ordean's Will*, 195 Minn. 120, 261 N.W. 706 (1935). If there is no ambiguity in the language when read in light of the surrounding circumstances, extrinsic evidence of the trustor's intent is not allowed. *In re Hartman's Will*, 347 N.W.2d 480 (Minn.1984). The reviewing court may not speculate as to what the trustor would have done if he knew of events that occurred after his death. *Id.* at 484.

■ The trustor's intent is a fact issue, which is normally subject to the clearly erroneous standard. However,

[w]here, as in this case, the critical evidence is documentary, there is no necessity to defer to the trial court's assessment of the meaning and credibility of that evidence.

*In re Trust Known as Great Northern Iron Ore Properties*, 308 Minn. 221, 225, 243 N.W.2d 302, 305 (1977).

■ Richard's proposal reflects a literal interpretation of the trust instrument. The trustee cannot disregard the plain words of the instrument "unless it clearly appears that they were otherwise used [ambiguous] or that an unreasonable or absurd result will follow therefrom." *In re Fiske's Trust*, 242 Minn. 452, 460, 65 N.W.2d 906, 911 (1954). Without deciding whether the language was ambiguous, the trial court decided it led to an unreasonable or absurd result.

The trial court's decision is based on the belief that Wiedemann intended to benefit his grandchildren equally, as evidenced by the fifth article. The language clearly indicates that the grandchildren are to benefit equally. However, William and the trial court further assume that the grandchildren do not benefit equally unless their issue receive their parent's equal share.

■ If the testator provides equally for his children, it does not necessarily follow that he intends to provide equally for more distant generations yet unborn. *Hartman*, 347 N.W.2d at 484. Karl Wiedemann's trust shows his primary interest was to provide for his daughter, Edna Vogel. She was entitled to dispose of the entire corpus if she so desired. She did not exercise her testamentary option. Since it is always highly possible a person may die intestate, Karl Wiedemann provided for that possibility by dividing the principal among Edna's children. Edna Vogel had one son at the time of the trust, and was still of childbearing age.

Edna Vogel's children had to survive their mother and grandmother before they received their income interest. Wiedemann further imposed a condition that the grandchild reach age thirty before receiving a share of the principal. Again recognizing it was highly possible the grandchild or children would not reach age thirty, he made an ultimate contingent distribution dividing the trust equally among his daughter's heirs at law. One need not go through any mental gymnastics to see the likelihood of an uneven distribution of the principal, depending on how many more children Edna Vogel had, how many children those children had, and how long Edna Vogel's children survived. Karl Wiedemann certainly could have considered this, and chose not to make a more specific division. He was willing to exclude his grandchildren entirely if Edna Vogel exercised her power of appointment.

■ A court may not rewrite a trust or will to provide by conjecture what a trustor might have intended if he knew how events would occur, "or to escape what seems to be an undesirable result." *In re Cosgrave's Will*, 225 Minn. 443, 449, 31 N.W.2d 20, 25 (1948). Under a literal interpretation of the trust's sixth article, Richard receives approximately 75% of the trust principal, but he is one generation closer to the trustor than is William. While this result may appear harsh to William, this court cannot substitute its own view of what might be fair for the unambiguous words of the trust instrument. Although others may divide their wealth differently, the language of the trust created by Karl Wiedemann does not lead to a result that is unreasonable or absurd.

William argues alternatively that the language "child or children" in the fifth subdivision is ambiguous, and Karl Wiedemann intended that phrase to include issue. William claims the words child, children and issue are used loosely, without precision, throughout the trust instrument. However, each example is understandable in its context. Edna Vogel had a power of appointment to "her children and issue." Perhaps it is redundant, as issue does include children, but it does reflect the existence of one child at the time of the trust's creation, and the potential for an indefinite assortment of "issue."

■ Finally, even if it may be assumed Karl Wiedemann intended to treat his grandchildren equally, it does not necessarily follow that he intended to treat his great-grandchildren equally with his grandchildren, thus creating an ambiguity in the word "children" in article five. As a general rule, the word children does not include grandchildren. *Hartman,* 347 N.W.2d at 485. The same rule should apply to other generational leaps. There is nothing here to overcome that presumption.

## DECISION

The language of the trust is clear and unambiguous, and does not lead to an unreasonable or absurd result. The final distribution of the trust should be divided equally between the heirs at law of Edna Vogel.

Reversed.