**In the Matter of the Trust Created Under the Last Will and Testament of Lytton J. SHIELDS, Deceased.**

Nos. C1–96–569, C1–96–586.

Court of Appeals of Minnesota.

· Aug. 27, 1996.

Review Denied Oct. 29, 1996.

Perry M. Wilson, III, Julia L. Rau, Dorsey & Whitney, L.L.P., Minneapolis, for appellant Will Young.

James E. Blancy, Moore, Costello & Hart, P.L.L.P., St. Paul, for appellants Lori Bunker, James Young, John Young and Melissa Young.

John C. Johanneson, Jennifer A. Tenenbaum, Maun & Simon, P.L.C., St. Paul, for respondent Judith A. Young.

Cole Oehler, Jeffrey F. Shaw, Briggs & Morgan, P.A., St. Paul, for First Trust National Association.

Considered and decided by PARKER, P.J., TOUSSAINT, C.J., and KLAPHAKE, J.

## OPINION

PARKER, Judge.

First Trust National Association, the trustee, filed a petition for instructions as to the distribution of the residuary trust created by the will of Lytton J. Shields (testator). The trustee asked the district court to determine whether the term "grandchildren" as used in the will included great-grandchildren. The district court found that the will was unam-

biguous and that the term grandchildren did not include great-grandchildren. We affirm.

## FACTS

Lytton Shields executed his will in 1933. Following the testator's death in 1936, the will was admitted to probate in Ramsey County. Testator was survived by his wife, Helen Shields, and one child, Cynthia Shields.

Helen Shields died in 1950, survived by her daughter Cynthia Shields. Cynthia Shields had four children: William Young, John Young, Robert Young, and respondent Judith Young. Cynthia Shields died on May 3, 1993. She was survived by her son, William Young, and by respondent. William Young, however, died shortly after his mother, on June 4, 1993. He was survived by his five children: Lori Bunker, John Young, James Young, Melissa Young, and Will Young (appellant great-grandchildren).

The testator's will provides:

Should my children [1] marry and have children, then after the death of my wife, Helen, and either or both of my children, my Trustees are authorized to use the income and principal, if necessary, for the education and support of my grandchildren.

Because the district court found that the will was unambiguous and that "grandchildren" does not include great-grandchildren, he ordered the trust income to be used only for the benefit of respondent. The great-grandchildren appeal.

## ISSUE

Did the district court err in determining that "grandchildren" as used in the testator's will does not include great-grandchildren?

## DISCUSSION

■ Whether a will is ambiguous is a question of law that this court reviews de novo. *In re Estate of Zagar*, 491 N.W.2d 915, 916 (Minn.App.1992).

"In construing a will, the cardinal rule is that the testator's intention is to be gathered from the language of the will itself. * * * Conversely, intention which the testator may have had, but did not express in his will, cannot be considered." Though the court is to consider surrounding circumstances, it cannot speculate what the testator would have done with knowledge of events subsequent to his or her death and thereby rewrite the will.

*In re Hartman,* 347 N.W.2d 480, 484 (Minn. 1984) (citations omitted).

Appellants contend the district court erred by focusing on whether the word "grandchildren" is ambiguous and that the court should have determined what the testator meant by "grandchildren" in light of the surrounding circumstances.

First, appellants argue that because a primary and secondary meaning of the word "grandchild" existed at the time the testator executed his will, the court should have examined all of the provisions of the trust instrument before determining that the word "grandchildren" was not ambiguous. Appellants point to two definitions of "grandchild." Appellants assert that at the time the testator executed his will, he could have walked to the College of St. Catherine's library and found the following definition of "grandchild":

A son's or daughter's child; a child or offspring in the second degree of descent: sometimes used loosely to include a degree more remote * * *.

*The Century Dictionary and Cyclopedia* 2596 (The Century Co.1914). Appellants also point out that Black's Law Dictionary, fourth edition, states:

The term 'grandchild' may or may not embrace great-grandchildren according to the meaning of the testator. Standing alone, it is restricted to children's children, but it may be enlarged by the context so as

1. The will refers to "children" because the testator and his wife had planned to adopt another child, James Shields. Because the adoption was never finalized, the codicil to the will revoked the bequests to James Shields.

to embrace great-grandchildren or even more remote descendants.

*Black's Law Dictionary* 828 (4th ed. 1968).

■ Appellants have selectively chosen the dictionary definitions that they have cited. We note that Webster's Daily Use Dictionary, published one year before the testator executed his will, defines "grandchild" as "the child of one's son or daughter." *Webster's Daily Use Dictionary* 331 (Grosset & Dunlap, Inc., 1932). The Cyclopedic Law Dictionary, published in 1922, defined "grandchildren" as "[t]he children of one's children." *Cyclopedic Law Dictionary* 464 (2nd ed. 1922). In addition, the fifth edition of Black's Law Dictionary, to which appellants cite for a different proposition, defines grandchild as "[g]enerally, child of one's child. Descendant of second degree." *Black's Law Dictionary* 629 (5th ed. 1979). There is no evidence in the record that the testator relied on any dictionary definition of "grandchild," nor is there any evidence that the testator intended for "grandchildren" to have any meaning other than the ordinary meaning of "grandchildren." *See In re Convey's Estate,* 177 Minn. 266, 269, 225 N.W. 17, 18 (1929) ("Where there is no ambiguity, the testator is presumed to have used words in their ordinary and popular sense").

Second, appellants contend that by examining the testator's will, it is apparent that the testator's intent was inclusive. The testator's will provided for one-time specific gifts to his wife, daughter, mother, three sisters, two nephews, in-laws, and his cousin. The will also provided for annual gifts to his wife, his mother, and three unrelated individuals. Appellants assert that because of the inclusive nature of the will, there is nothing to suggest that the testator intended to exclude his unborn great-grandchildren.

The inclusive nature of the testator's will, however, concerns only individuals the testator knew when he was alive. Although the testator clearly indicated his intention to benefit the children of his daughter, Cynthia Shields, it does not necessarily follow that the testator meant to benefit any great-grandchildren.

Appellants rely on *In re Kittson's Estate,* 177 Minn. 469, 225 N.W. 439 (1929), to argue that "grandchildren" should include great-grandchildren. In *Kittson,* the issue was whether the terms "nephews" and "nieces" in a will included grandnephews and grandnieces. *Id.* at 471, 225 N.W. at 440. In *Kittson,* the testator made a bequest to the surviving children of his deceased brother. *Id.* at 470, 225 N.W. at 440. His nephew, the son of the deceased brother, died before the will was executed, leaving two children. *Id.* at 470–71, 225 N.W. at 440. Knowing that there was only one surviving child of the deceased brother, the testator's niece, the testator made a class gift to "nephews and nieces." *Id.* The court noted that ordinarily the words "nephew" and "niece" do not include "grandnephew" or "grandniece." *Id.* at 471, 225 N.W. at 440. The court stated that "[i]f the plain language of the will does not leave the taker of this bequest uncertain or doubtful, there is no occasion or room for construction or search for testator's intent." *Id.* The *Kittson* court, however, found that the will was ambiguous due to the fact that when the will was made, the testator knew that his nephew had died five years earlier and that the only living child of his deceased brother was the respondent, his niece. *Id.* The court reasoned that if the testator wanted only the respondent to take, he would not have used the terms "nephews and nieces" and "children." *Id.* The court concluded that the general scheme of the testator's will appeared to be to benefit his brothers and sisters equally, "so that each and the surviving lineal descendants of any brother or sister predeceasing testator should have an equal share." *Id.* at 472, 225 N.W. at 441. Thus, the court found that the terms "nephews and nieces" included grandnephews and grandnieces. *Id.*

The *Kittson* case is distinguishable on its facts from the present case. First, in *Kittson* the will was patently ambiguous because it referred to additional children of a deceased person. The will provided for a class gift to nephews and nieces when it was clear that the respondent would be the only niece. Second, in *Kittson* the testator's intent to benefit the surviving lineal descendants of his brothers and sisters by right of representation was evident from the language of the

will. Here, the will does not indicate that anyone should take by right of representation.

After carefully reviewing the will, we agree with respondent that *In re Hartman*, 347 N.W.2d at 480, is more closely analogous to the present case than *Kittson*. The will provision at issue in *Hartman* stated:

> If my said grandson * * * be not living at the time of the termination of said trust, and there should be *another child, or children, of my said daughter* * * * living at that time, then said Trustees shall hold said trust fund and estate for the benefit of such child, or children * * *.

*Id.* at 482. The issue was whether the term "another child, or children, of my said daughter" includes "grandchildren." *Id.* at 484. The appellants, great-grandchildren of the testator, argued that since the testator knew that his daughter did not plan to have any more children, the provision for distribution to "another child, or children" was ambiguous. *Id.* The Minnesota Supreme Court reversed the district court's decision that the testator meant to include grandchildren in the phrase "another child, or children," stating:

> The weakness with the great grandchildren's argument is that it draws inferences that are not compelled by the facts. If the court is to determine the testator's intent based on the language of the will in light of the surrounding circumstances, it should draw those inferences from the surrounding circumstances that most closely reflect the plain meaning of the language.

*Id.*

■ The problem with appellants' arguments here seems to be the same problem that the great-grandchildren had in *Hartman:* "The weakness with the great grandchildren's argument is that it draws inferences that are not compelled by the facts." *Id.* We cannot infer that the testator meant to provide for his great-grandchildren where the plain meaning of the language of the will shows that the testator intended to provide for his grandchildren. The will states:

> Should my children marry and have children, then after the death of my wife, Helen, and * * * my children, my Trustees are authorized to use the income and principal, if necessary, for the education and support of my grandchildren.

The language, "[s]hould my children marry and have children," describes who the testator meant when he referred to "grandchildren" later in the same paragraph. As the *Hartman* court explained, a court "should draw those inferences from the surrounding circumstances that most closely reflect the plain meaning of the language." *Id.*; *see Kittson*, 177 Minn. at 471, 225 N.W. at 440 ("primary or ordinary meaning of the word 'nephew,' 'niece,' 'child' does not include 'grandnephew' or 'grandniece' or 'grandchild' ").

Finally, as respondent points out, paragraph 9 of the will supports the conclusion that the testator meant to benefit his grandchildren, rather than any great-grandchildren. Paragraph 9 provides:

> On the expiration of said trust, I desire that the Trust Estate shall be distributed equally *among the surviving children of Cynthia Ann Shields* * * *, and in the event there are no such children, then among my legal heirs-at-law* * * *.

(Emphasis added.) This provision corroborates that the testator intended for the trust estate to be distributed to his grandchildren, "the surviving children of Cynthia." The testator's great-grandchildren would be beneficiaries, as the testator's legal heirs at law, only if there were no surviving children of Cynthia Shields. *See In re Estate of Zagar*, 491 N.W.2d 915, 917 (Minn.App.1992) ("Where survivorship language is used in a class gift, the beneficiaries are the surviving class members, not the heirs of predeceased members.").

■ We note that we have also considered appellants' arguments concerning the various rules of construction. We agree with respondent that the district court's interpretation of the trust instrument does not disinherit the great-grandchildren; upon termination of the trust they will inherit if there are no surviving grandchildren. The decedent had a right to prefer immediate decedents, as long as any should live, to those more remote. *See*

*Lichter v. Bletcher,* 266 Minn. 326, 330, 123 N.W.2d 612, 615 (1963) (rules of construction do not control a testator's actual intention).

### DECISION

Because the language of the will does not indicate that the testator meant to include great-grandchildren in the term "grandchildren," the district court did not err by concluding that "grandchildren" does not include great-grandchildren.

**Affirmed.**