*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1033**

In re the Estate of: Edward D. Kane
a/k/a Edward Donald Kane, Decedent.

**Filed April 25, 2016
Affirmed in part, reversed in part, and remanded
Hooten, Judge**

Rice County District Court
File No. 66-PR-13-2646

John R. Neve, Evan H. Weiner, Neve Webb, PLLC, Edina, Minnesota (for appellant)

Mary L. Hahn, Barbara K. Lundergan, Hvistendahl, Moersch, Dorsey & Hahn, P.A., Northfield, Minnesota (for respondents)

Considered and decided by Rodenberg, Presiding Judge; Hooten, Judge; and Klaphake, Judge.[*]

**U N P U B L I S H E D   O P I N I O N**

**HOOTEN**, Judge

In this probate appeal, appellant argues that the district court abused its discretion by determining that the extrinsic evidence offered at trial was insufficient to cure an ambiguity in decedent's will and by awarding respondents attorney fees and costs from decedent's estate. We conclude that the district court properly awarded attorney fees and

_____

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

costs to respondents. But, we also conclude that the district erred by determining that the credible and undisputed extrinsic evidence offered at trial was insufficient to determine decedent's intent and to cure the ambiguity in his will. Accordingly, we affirm in part, reverse in part, and remand.

## FACTS

Edward D. Kane (decedent) died on May 24, 2010. He lived in Minnesota at the time he executed his will on June 22, 1989, and up until the time of his death. Decedent's wife, Gene Kane, died on October 22, 2011. The couple had three surviving children: appellant Jeane Kane, who is decedent's successor personal representative, and respondents Raymond Kane and James Kane. Throughout her parents' lives and up until the present, appellant has resided in Minnesota. Raymond left Minnesota in 1967, James left Minnesota in 1971, and they both presently live in Tennessee.

On October 22, 2013, appellant filed a petition for determination of descent, seeking a declaration that decedent died testate and that his June 22, 1989 will was valid and unrevoked. On November 15, 2013, respondents filed an objection and cross-petition for determination of descent. On April 8, 2014, respondents filed an objection and amended cross-petition.

Attached to her petition, appellant submitted a document that purported to be decedent's original will, which was dated June 22, 1989. Paragraph 2.2 of decedent's will stated: "I give and devise to my wife, Gene C. Kane a life estate in *my real property which is described in the attached [e]xhibit 'A'*, with the remainder over to my daughter, [appellant], or her survivors per stirpes." (Emphasis added.) However, exhibit A was not

2

attached to the will that was filed for probate. Decedent's will also provided that the residue of his estate would pass to Gene Kane. Gene Kane's will, which was prepared at the same time and by the same attorney who prepared decedent's will, provided that any property she owned at the time of her death would be divided equally among her three children.

In 1977, decedent inherited from his parents a 120-acre farm in Rice County. Decedent's family had owned the farm since 1892. At the time decedent's will was drafted in 1989, this was the only real property that he owned, and he owned it as one parcel. In 1998, he sold a 4.1-acre parcel of the farm on which the house, barn, and outbuildings were situated. The remaining 115.9 acres of farmland were rented out. At the time of his death on May 24, 2010, decedent owned 115.9 acres of farmland. The farmland was titled in decedent's name alone. This was the only real property that decedent owned at the time of his death, and he owned it as one parcel.

In her petition, appellant argued that, pursuant to paragraph 2.2 of decedent's will, she "now possesses the remainder interest in the [farmland]." In their objection and amended cross-petition, respondents countered that paragraph 2.2 of the will failed because the will lacked exhibit A, the farmland passed to Gene Kane through the residuary clause of decedent's will, and the farmland now passes to all three children equally under Gene Kane's will. Based on these grounds, respondents moved for summary judgment. Appellant filed a memorandum in opposition, arguing that because there was no exhibit A, paragraph 2.2 of the will was ambiguous and extrinsic evidence should be allowed to determine decedent's intent. Appellant also argued that decedent intended through

3

paragraph 2.2 to devise all of his real property to her, while respondents argued that decedent intended to devise less than all of his real property to her.

On June 17, 2014, the district court denied respondents' motion for summary judgment, concluding that the phrase, "my real property," in paragraph 2.2 of the will was ambiguous as to whether decedent intended to devise all of his real property, or only a portion of it, to Gene Kane in a life estate and subsequently to appellant in fee. The district court determined that there was a genuine issue of material fact as to "whether [e]xhibit A was ever prepared and what it might have stated if it was."

A two-day bench trial was held in October 2014. The main issue at trial was the interpretation of paragraph 2.2 of the will based on extrinsic evidence. The district court heard testimony from appellant, respondents, the parties' first cousin,[1] and James Keating, the attorney who prepared the wills for decedent and Gene Kane. The only witness who had firsthand knowledge of the circumstances surrounding the drafting of decedent's will was Keating. Keating had originally retained a copy of decedent's will, but destroyed all of his files when he retired.

Keating testified that he believed he had two meetings with decedent and Gene Kane regarding their wills. He testified that, at the first meeting, decedent stated that his plan for distribution was a life estate in "all of his real property" to Gene Kane, with the remainder to be left to appellant, "to the exclusion of [respondents]." The district court found that

---

[1] The parties' first cousin testified in support of respondents' contention that decedent revoked the devise in paragraph 2.2 of his will near the end of his life. But, the district court concluded that respondents did not prove by a preponderance of the evidence that decedent revoked the devise. Respondents do not challenge this conclusion.

4

Keating's testimony regarding the first meeting was credible. The district court also found "Keating's testimony regarding [decedent's] wishes to be credible."

Keating also testified that if decedent had told him that he wanted to bequeath only a portion of his real property to appellant, Keating would have used different language in paragraph 2.2, to wit: "in *that portion of* my real property." (Emphasis added.) Keating testified that rather than including a legal description of real property in the body of a will, he would typically attach it to the will as an exhibit. He believed that exhibit A was originally attached to the will. But, Keating did not specifically remember if decedent had provided a photocopy of a legal description of the real property that was attached as exhibit A or if his office had actually prepared an exhibit A. Moreover, Keating did not specifically remember reviewing a legal abstract for the real property. The district court found that Keating's testimony was credible as to his typical practice, "but was not specific to [decedent's will]."

The district court concluded that the extrinsic evidence admitted at trial did not cure the ambiguity in paragraph 2.2 of the will because the lack of exhibit A was a "material omission," and the district court therefore concluded that paragraph 2.2 failed. Because the specific devise in paragraph 2.2 failed, the district court determined that decedent's real property passed by way of the residue clause of his will to Gene Kane and thereafter equally to their three children, as tenants in common, through Gene Kane's will. In addition, the district court awarded to respondents farm rents from 2011 to 2014, which amounted to a $60,463.33 judgment against appellant personally.

5

Respondents moved for attorney fees and costs from decedent's estate pursuant to Minn. Stat. § 524.3-720 (2014). The district court granted the motion and awarded attorney fees and costs to respondents in the amount of $50,869.67. This appeal followed.

**D E C I S I O N**

**I.**

Appellant argues that the district court abused its discretion by concluding that the extrinsic evidence offered at trial was insufficient to cure the ambiguity in decedent's will. "The primary purpose of construing a will is to discern the testator's intent." *In re Estate & Trust of Anderson*, 654 N.W.2d 682, 687 (Minn. App. 2002), *review denied* (Minn. Feb. 26, 2003); *see also* Restatement (Third) of Prop.: Wills and Other Donative Transfers § 10.1 (2003) ("The controlling consideration in determining the meaning of a donative document is the donor's intention. The donor's intention is given effect to the maximum extent allowed by law."). "[W]e determine the testator's intent from a full and complete consideration of the entire will." *In re Estate of Lund*, 633 N.W.2d 571, 574 (Minn. App. 2001); *see In re Trust of Shields*, 552 N.W.2d 581, 582 (Minn. App. 1996) ("In construing a will, the cardinal rule is that the testator's intention is to be gathered from the language of the will itself." (quotation omitted)), *review denied* (Minn. Oct. 29, 1996).

"Whether a will is ambiguous is a question of law that this court reviews de novo." *Shields*, 552 N.W.2d at 582. A will is ambiguous if the language of the will on its face suggests more than one interpretation or if the surrounding circumstances reveal more than one interpretation even though the language is clear on its face. *In re Estate of Arend*, 373 N.W.2d 338, 342 (Minn. App. 1985); *see also* Restatement (Third) of Prop.: Wills and

6

Other Donative Transfers § 11.1 ("An ambiguity in a donative document is an uncertainty in meaning that is revealed by the text or by extrinsic evidence other than direct evidence of intention contradicting the plain meaning of the text."). If there is no ambiguity, extrinsic evidence is not admissible. *In re Trusts of Hartman*, 347 N.W.2d 480, 483 (Minn. 1984). However, if ambiguity "exist[s] in the will[,] extrinsic evidence may be admitted to resolve the ambiguity." *Arend*, 373 N.W.2d at 342; *see also* Restatement (Third) of Prop.: Wills and Other Donative Transfers § 11.2 cmt. b ("Because the primary objective of construction is to give effect to the donor's intention, extrinsic evidence relevant to the donor's intention may be considered along with the text of the document in seeking to determine the donor's intention.").

The district court correctly concluded that paragraph 2.2 of the will is ambiguous on its face because it refers to real property as described in exhibit A, but exhibit A is not attached. There is no ambiguity as to whom decedent intended his real property to pass, because the devise refers only to Gene Kane and appellant. But, it is unclear from the language of the will what real property decedent intended to devise to appellant because a description of the real property was not attached to the will as exhibit A at the time that the will was filed for probate.

Whether the district court erred by concluding that the extrinsic evidence offered at trial was insufficient to determine decedent's intent and to cure the ambiguity in decedent's will presents a mixed question of law and fact.

> In an appeal from a bench trial, we do not reconcile conflicting evidence. We give the district court's factual findings great deference and do not set them aside unless

7

> clearly erroneous. However, we are not bound by and need not give deference to the district court's decision on a purely legal issue. When reviewing mixed questions of law and fact, we correct erroneous applications of law, but accord the [district] court discretion in its ultimate conclusions and review such conclusions under an abuse of discretion standard.

*Porch v. Gen. Motors Acceptance Corp.*, 642 N.W.2d 473, 477 (Minn. App. 2002) (quotation and citations omitted), *review denied* (Minn. June 26, 2002). "A district court abuses its discretion by resolving the matter in a manner that is against logic and the facts on record." *Beardsley v. Garcia*, 731 N.W.2d 843, 848 (Minn. App. 2007) (quotation omitted), *aff'd*, 753 N.W.2d 735 (Minn. 2008). "Findings of fact are clearly erroneous only if the reviewing court is left with the definite and firm conviction that a mistake has been made." *Fletcher v. St. Paul Pioneer Press*, 589 N.W.2d 96, 101 (Minn. 1999) (quotation omitted). We defer to the district court's credibility determinations. *Vangsness v. Vangsness*, 607 N.W.2d 468, 472 (Minn. App. 2000).

The district court determined that Keating's testimony regarding decedent's donative intent was credible. Keating unequivocally testified that decedent intended through paragraph 2.2 of the will to devise the entirety of his farmland to appellant, subject to the life estate of Gene Kane, and to the exclusion of respondents. Respondents presented no evidence to dispute this testimony. Keating also testified that, consistent with his standard practice in drafting wills, if decedent had intended to devise only a portion of his farmland to appellant, Keating would have drafted paragraph 2.2 to read: "I give and devise to my wife, Gene Kane, a life estate in *that portion of* my property described [in] [e]xhibit

8

A." (Emphasis added.) Keating added that the term "my real property" in paragraph 2.2 "means all of [decedent's] property, all of his real property."

The district court determined that Keating's testimony "was credible and detailed as to his regular practice" of preparing wills. Keating testified that it was his practice to have two meetings with his clients. At the first meeting, he would discuss with the client what the client wanted the will to say. If Keating was preparing a will that required a legal description of real property to be attached, his practice was to have the client bring the legal description into his office after the first meeting. Keating explained that the legal description would be an abstract or some other document that described the real property. Rather than retyping the legal description into the body of the will, he would attach it to the will as an exhibit so that no mistakes would be made in retyping the description. After the first meeting, Keating would prepare the will in conformity with the client's intent and would then mail it to the client for review. At the second meeting, Keating would discuss the will with the client, verify that the will was correctly drafted, and correct any errors. Then the client and witnesses would sign the will.

The district court also determined that Keating's testimony about his first meeting with decedent and Gene Kane was credible. Regarding this first meeting, Keating testified that (1) decedent's "plan was to transfer a life estate to his wife in his farmland, and the remainder of that property was to go to [appellant] to the exclusion of [respondents]," and (2) decedent did not tell Keating that he wanted to devise only "part" of his farmland to appellant. It is undisputed that decedent owned only one parcel of real property at the time he executed his will in 1989 and at the time he died in 2010: the farmland.

9

Based upon this direct extrinsic evidence of decedent's intent, which the district court explicitly found was credible, along with the absence of any contrary evidence, we conclude as a matter of law that, on this record, appellant proved by a preponderance of the evidence that decedent intended through paragraph 2.2 of his will to devise the entirety of his real property to appellant. *See* Restatement (Third) of Prop.: Wills and Other Donative Transfers § 11.2 cmt. o ("Once the donor's intention is established by a preponderance of the evidence, the [will] is construed in accordance with that intention."); *see also Rixmann v. City of Prior Lake*, 723 N.W.2d 493, 495 (Minn. App. 2006) ("In civil actions, the standard of proof required is generally a fair preponderance of the evidence."), *review denied* (Minn. Jan. 24, 2007); *cf.* Minn. Stat. § 524.3-407 (2014) (providing that in contested cases, "[p]roponents of a will have the burden of establishing prima facie proof of due execution"). This conclusion is consistent not only with the credible extrinsic evidence produced at trial, but also with the language of the will itself. *See In re Estate of Cole*, 621 N.W.2d 816, 819 (Minn. App. 2001) ("Extrinsic evidence is to be used to determine what the testator meant by the words used, not to determine an intent that cannot be found in the words employed in the instrument.").

Notwithstanding this clear, credible, and undisputed evidence of decedent's intent and of Keating's standard practices in drafting wills, the district court concluded that the extrinsic evidence admitted at trial did not clarify whether decedent intended to devise all of his real property, or only a portion of it, to Gene Kane in a life estate and subsequently to appellant. The district court based this conclusion on the fact that Keating did not specifically remember (1) preparing exhibit A to decedent's will; (2) what *type* of

description (a legal abstract or some other description) of decedent's property exhibit A would have contained; or (3) indeed, whether exhibit A was ever actually attached to the will. The district court concluded that the missing exhibit A was a "material omission" in the will and therefore that paragraph 2.2 failed.

But, in light of the clear, credible, and undisputed evidence of decedent's intent, Keating's usual practices in preparing wills, and the fact that decedent owned only one parcel of land, we conclude that the district court erred by determining that the missing exhibit A was a "material omission." *See* Restatement (Third) of Prop.: Wills and Other Donative Transfers § 11.2 cmt. o. Although Keating did not specifically remember the contents of the legal description in exhibit A, or whether he actually attached exhibit A to the will, he was adamant that he "prepared the will consistent[ly] with [decedent's] wishes." There is no evidence in the record to raise any reasonable inference that Keating's preparation of decedent's will, including his preparation of exhibit A, departed from his usual practices. *See* Minn. R. Evid. 406 ("Evidence of the habit of a person . . . is relevant to prove that the conduct of the person . . . on a particular occasion was in conformity with the habit . . . ."). And, Keating unequivocally testified that at the first meeting, decedent stated that his intent was to devise *all* of his farmland to appellant, who lived in Minnesota, and to exclude respondents, who lived in Tennessee. By dropping paragraph 2.2 from the will, the district court abused its discretion because its conclusion that the extrinsic evidence offered at trial was insufficient to determine decedent's intent and to cure the ambiguity in his will "is against logic and the facts on record." *Beardsley*, 731 N.W.2d at

11

848. Moreover, by not effectuating decedent's intent, the district court undermined "[t]he primary purpose of construing a will." *Anderson*, 654 N.W.2d at 687.

Respondents argue that the district court did not abuse its discretion, relying on *In re Trust of Cosgrave*, in which the Minnesota Supreme Court stated: "In construing a will, the cardinal rule is that the testator's intention is to be gathered from the language of the will itself. Conversely, intention which the testator may have had, but did not express in his will, cannot be considered." 225 Minn. 443, 448–49, 31 N.W.2d 20, 25 (1948) (citations omitted). *Cosgrave* is inapposite, however, because that case did not involve ambiguous language in a will. *See id.* at 449–51, 31 N.W.2d at 25–26. Rather, in *Cosgrave*, the Minnesota Supreme Court interpreted language in a will that was "plain" and "clear beyond doubt." *See id.* Here, unlike in *Cosgrave*, there was an exhibit missing from the will, which created an ambiguity as to the real property that decedent devised, and this ambiguity was resolved by the credible and undisputed extrinsic evidence of decedent's intent that was produced at trial.

We reverse the district court's decision as to the distribution of decedent's real property and remand for the district court to award appellant the real property in its entirety. Because respondents are not entitled to farm rents from 2011 to 2014, we also reverse the district court's award of farm rents to respondents.

## II.

Appellant next argues that the district court abused its discretion by awarding respondents attorney fees and costs from decedent's estate. We review a district court's order regarding attorney fees for an abuse of discretion. *In re Estate of Torgersen*, 711

12

N.W.2d 545, 550 (Minn. App. 2006), *review denied* (Minn. June 20, 2006). We will not set aside the district court's findings of fact unless they are clearly erroneous. Minn. R. Civ. P. 52.01.

Under Minnesota law, attorney fees and expenses may be paid from the estate under certain circumstances. Minn. Stat. § 524.3-720. In pertinent part, the statute reads:

> [W]hen, and to the extent that, the services of an attorney for any interested person contribute to the benefit of the estate, as such, as distinguished from the personal benefit of such person, such attorney shall be paid such compensation from the estate as the court shall deem just and reasonable and commensurate with the benefit to the estate from the recovery so made or from such services.

*Id.*

Appellant argues that "[r]espondents have done nothing to benefit the estate. Instead, their work at the [d]istrict [c]ourt benefited solely themselves." Respondents counter that they benefitted the estate because they "facilitated the district court's construction of an ambiguous instrument."

In *Torgersen*, we stated that the public policy underlying section 524.3-720 "recognize[s] that an estate as an entity is benefited when genuine controversies as to the validity or construction of a will are litigated and finally determined." 711 N.W.2d at 555 (quotation omitted). And, in *Gellert v. Eginton*, we stated that "'a fiduciary acting on behalf of the estate, in good faith, [should be able to] pursue appropriate legal proceedings without having to risk personal financial loss by underwriting the proceeding's expenses.'" 770 N.W.2d 190, 197 (Minn. App. 2009) (quoting *Torgersen*, 711 N.W.2d at 555), *review denied* (Minn. Oct. 20, 2009). We rejected the argument that, in order to contribute to the

benefit of the estate, interested persons must not themselves benefit from the proceedings. *Id.* at 197–98.

The district court implicitly found that respondents pursued their claim for the benefit of the estate and that the amount awarded was "just and reasonable and commensurate with the benefit to the estate." *See* Minn. Stat. § 524.3-720. These findings are not clearly erroneous because a trial was necessary to determine decedent's intent in paragraph 2.2 of the will. We conclude that the district court did not abuse its discretion by awarding respondents attorney fees and costs from the estate because a "genuine controvers[y] as to the validity or construction of [the] will [was] litigated and finally determined." *Torgersen*, 711 N.W.2d at 555.

**Affirmed in part, reversed in part, and remanded.**