*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0504**

In the Matter of:
Trust Agreement of Don D. Henyan
Created Under Agreement
Dated May 1, 2006, as Amended.

**Filed November 21, 2016
Affirmed
Johnson, Judge**

Ramsey County District Court
File No. 62-TR-CV-15-9

Melissa Henyan, Franklin, Tennessee (pro se appellant)

Eric J. Lindstrom, Lindstrom Law Offices, Edina, Minnesota (for respondent trustee Molly S. Baglio)

Considered and decided by Reilly, Presiding Judge; Halbrooks, Judge; and Johnson, Judge.

**U N P U B L I S H E D   O P I N I O N**

**JOHNSON**, Judge

The parties to this case are two sisters who are the beneficiaries of a trust established by their father, who now is deceased. One sister challenged actions taken by the other sister as attorney-in-fact for their father during his lifetime and as trustee of the trust after their father's death. The district court rejected the challenge on a motion for summary judgment. We affirm.

## FACTS

In 2006, Don D. Henyan (decedent) established a revocable living trust. He appointed himself and his wife to serve as co-trustees. His wife died in 2012. He later appointed a daughter, Molly S. Baglio (Baglio), to be a co-trustee.

In January 2013, decedent amended the trust instrument. As amended, the trust instrument provides that, upon decedent's death, the trustee "may, directly or through the Personal Representative of my estate, pay . . . the expenses of my last illness and funeral, valid debts and expenses of administering my estate, including my non-probate assets." The amended trust instrument also provides that, upon decedent's death, the trustee shall distribute tangible personal property in the manner specified in a document written or signed by decedent or, if unspecified, to Baglio. The amended trust instrument further provides that Baglio is to receive $250,000 "because of all the care, affection and attention she has provided to me over the years." And the amended trust instrument provides that, upon decedent's death, all remaining trust assets should be distributed in equal shares to Baglio and decedent's other daughter, Melissa A. Henyan (Henyan). At the same time that he amended the trust instrument, decedent executed a bill of sale by which he conveyed all of his tangible personal property to the trust.

In January 2013, decedent also executed a statutory short-form power-of-attorney document in which he authorized Baglio to act as his attorney-in-fact with respect to all matters specified in the form. Baglio's authority was to remain effective if decedent were to become incapacitated or incompetent. The power-of-attorney document states that Baglio was not required to provide an accounting unless requested by decedent or required

2

by section 523.21 of the Minnesota Statutes. At the same time that he executed the power-of-attorney document, decedent executed a will in which he named Baglio as his personal representative.

Decedent died on February 25, 2013. On that date, he owned a Bremer Bank checking account with a balance of $45,481.97. After decedent's death, Baglio made expenditures with funds in the Bremer Bank checking account. In November 2013, Baglio transferred the balance of the account, then $11,099.64, to the trust by way of an affidavit for collection of personal property. *See* Minn. Stat. § 524.3-1201(a) (2014).

Approximately a year after decedent's death, Baglio, with the assistance of counsel, prepared a final accounting for the trust in preparation for the termination of the trust. On February 12, 2014, Baglio's attorney sent the final accounting to Henyan by mail. Section 6.3.6 of the amended trust instrument provides that if a beneficiary does not object to a trustee's accounting within 90 days, the lack of an objection "shall constitute a valid and effective release of the Trustee with respect to all transactions disclosed by the accounts." Henyan did not object to the final accounting within 90 days of February 12, 2014.

On October 23, 2014, an attorney retained by Henyan sent a five-page letter to Baglio's attorney. The letter alleged that Baglio had breached her fiduciary duty as trustee and had failed to properly administer the trust in several ways. Henyan's attorney requested additional information and documents. The letter does not expressly refer to the February 12, 2014 final accounting, though it refers to some of the transactions disclosed in it.

In February 2015, Henyan commenced this action by filing a petition pursuant to section 501B.16 of the Minnesota Statutes. In March 2015, Baglio responded to Henyan's petition and, separately, petitioned the district court for approval of a supplemental final accounting, the payment of professional fees, and the termination of the trust. The supplemental final accounting differed from the original final accounting by using a different method to value bonds owned by the trust and by including a gift of a vehicle from the trust to Baglio pursuant to decedent's written instructions concerning tangible personal property. The supplemental final accounting also revised the amounts of interest income, trustee fees, attorney fees, and accountant fees and showed a corresponding decrease in cash.

In April 2015, Baglio served and filed a second supplemental final accounting. The second supplemental final accounting differed from the previous accounting by allocating to Baglio the estate taxes incurred on life insurance proceeds that she had received. The second supplemental final accounting also revised the amount of attorney fees that had been incurred since the previous accounting and showed a corresponding decrease in cash.

On May 5, 2015, Henyan served and filed a response to Baglio's second supplemental final accounting. Henyan asserted objections to Baglio's actions as trustee pursuant to section 501B.16 of the Minnesota Statutes and objections to Baglio's actions as attorney-in-fact pursuant to section 523.26 of the Minnesota Statutes. More specifically, Henyan objected to certain payments made by Baglio from the Bremer Bank checking account, certain distributions made by Baglio from the trust, and certain transactions disclosed in the second supplemental final accounting.

4

In November 2015, Baglio moved for summary judgment on Henyan's petition and her own petition. In January 2016, the district court granted Baglio's motion. Henyan appeals.

## D E C I S I O N

Henyan argues that the district court erred by granting Baglio's motion for summary judgment.[1] A district court must grant a motion for summary judgment if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that either party is entitled to a judgment as a matter of law." Minn. R. Civ. P. 56.03. A genuine issue of material fact exists if a rational trier of fact, considering the record as a whole, could find for the nonmoving party. *Frieler v. Carlson Mktg. Grp.*, 751 N.W.2d 558, 564 (Minn. 2008). This court applies a *de novo* standard of review to the district court's legal conclusions on summary judgment and views the evidence in the light most favorable to the party against whom summary judgment was granted. *Commerce Bank v. West Bend Mut. Ins. Co.*, 870 N.W.2d 770, 773 (Minn. 2015).

## I. Objections to Actions of Trustee

Henyan first argues that the district court erred by granting Baglio's summary judgment motion with respect to her objections to Baglio's actions as trustee.

---

[1]Henyan was represented by counsel in the district court and in earlier stages of this appeal. Her attorneys withdrew from representation after submitting appellant's principal brief on her behalf.

The district court rejected Henyan's objections primarily on the ground that her objections were untimely. The district court relied on section 6.3.6 of the amended trust instrument, which provides that a beneficiary's failure to object to a trustee's accounting within 90 days constitutes a release of any objections to the accounting. The district court stated that Henyan did not object to the original final accounting until October 2014, which was far more than 90 days after Baglio's attorney sent the original final accounting to Henyan. The district court further reasoned that Henyan's opportunity to object was not revived by the supplemental final accounting or the second supplemental final accounting because the transactions disclosed in the original final accounting "were not substantively changed" in the subsequent accountings.

Henyan contends that the district court erred on the ground that a separate 90-day period applies to the original final accounting and also to each subsequent accounting. Henyan's argument requires us to interpret the amended trust instrument. In doing so, "our purpose . . . is to ascertain and give effect to the grantor's intent." *In re Stisser Grantor Trust*, 818 N.W.2d 495, 502 (Minn. 2012). The grantor's intent is "determined from the document as a whole." *Norwest Bank, N.A. v. Beckler*, 663 N.W.2d 571, 581 (Minn. App. 2003). If the language of the trust instrument is unambiguous, we determine the grantor's intent without resorting to extrinsic evidence. *Stisser*, 818 N.W.2d at 502. If the language of the trust instrument is ambiguous, however, we consider extrinsic evidence to resolve the ambiguity. *In re Estate of Arend*, 373 N.W.2d 338, 342 (Minn. App. 1985). We apply a *de novo* standard of review to a district court's interpretation of an unambiguous trust instrument. *Stisser*, 818 N.W.2d at 502.

6

Section 6.3.6 of decedent's amended trust instrument prescribes the manner in which a beneficiary may object to a trustee's accounting and the consequences of a failure to make a timely objection:

> **Approval of Trustee's Accounts if I am Incapacitated or Deceased.** If I am incapacitated or deceased, the Trustee (or the Personal Representative of any deceased Trustee) may render accounts to the persons who are currently eligible to receive distributions. *The approval of these accounts or the failure to object to the accounts within 90 days after the receipt of the accounts by those persons (or by those authorized to act on behalf of any such person), in writings delivered to any Trustee, shall constitute a valid and effective release of the Trustee with respect to all transactions disclosed by the accounts, and shall be binding and conclusive as to all persons.*

(Emphasis added.) The district court interpreted the word "accounts" in section 6.3.6 to refer only to the original final accounting. But the use of the plural form of the word indicates that the grantor contemplated that a trustee might issue more than one accounting and, if so, that a beneficiary would have more than one opportunity to assert objections. Also, the text of section 6.3.6 reveals that a failure to make a timely objection gives rise to a release "with respect to all transactions disclosed by" an accounting, not to the entire accounting. In this case, some transactions were disclosed in the original final accounting and later were reiterated in subsequent accountings. Some transactions, however, were not included in the original final accounting but were disclosed for the first time in the supplemental final accounting or the second supplemental final accounting. We interpret section 6.3.6 to allow a beneficiary 90 days to object to each new disclosure of a transaction within 90 days of the disclosure. Given that interpretation, the district court correctly

7

reasoned that Henyan was precluded from objecting to the transactions that were disclosed in the original final accounting. But the district court incorrectly reasoned that Henyan was precluded from objecting to the transactions that were not disclosed in the original final accounting but were disclosed for the first time in the supplemental final accounting or the second supplemental final accounting.[2]

Henyan asserted objections to certain transactions in the document she served and filed on May 5, 2015, which was within 90 days of her receipt of both the supplemental final accounting and the second supplemental final accounting. Specifically, Henyan objected to ten items in Baglio's second supplemental final accounting. Four of those items (22a, 22e, 23a, and 23d) were disclosed in the original final accounting. Five items (22b, 22c, 23b, 23c, and 23e) were disclosed for the first time in the supplemental final accounting or the second supplemental final accounting. One item (22d) was not disclosed, according to Henyan. Henyan's objections to six of the ten items (22b, 22c, 22d, 23b, 23c, and 23e) were not untimely.

The district court also rejected Henyan's objections to Baglio's actions as trustee on an alternative ground. The district court reasoned that, "even if" Henyan's opportunity to object was revived by the supplemental final accounting and the second supplemental final

---

[2]Henyan argues in the alternative that the district court should have considered her objections by applying equitable principles. We need not consider the alternative argument because Henyan did not preserve it by presenting it to the district court. *See Thiele v. Stich*, 425 N.W.2d 580, 582-83 (Minn. 1988). In any event, the alternative argument is superfluous because, in light of our interpretation of section 6.3.6, Henyan did not release her objections to transactions that were disclosed for the first time in the supplemental final accounting or the second supplemental final accounting.

accounting, Henyan "fail[ed] to demonstrate" that the later-disclosed transactions were not "ordinary, necessary and reasonable adjustments." The district court's alternative ground for rejecting Henyan's objections is valid. In both her objections and her memorandum of law in opposition to Baglio's motion, Henyan did not explain to the district court why the claimed attorney fees (22b) or trustee fees (22c) are unreasonable. Henyan also did not develop an argument why Baglio acted improperly with respect to alleged undisclosed expenses related to decedent's condominium (22d). Henyan also did not explain why personal property distributed by the trust to her (23b and 23c) was inaccurately valued or why she was prejudiced by the valuation. And Henyan did not explain why the allocation to Baglio of estate taxes incurred on life insurance proceeds that she had received was improper (23e). On appeal, Henyan either ignores these particular items or reiterates her general argument that the disclosures raise questions about the propriety of the transactions. Henyan has failed to identify any genuine issues of material fact with respect to these disclosures that would warrant a trial.

Thus, the district court did not err by granting Baglio's motion for summary judgment with respect to Henyan's objections to Baglio's actions as trustee.

## II. Objections to Actions of Attorney-in-Fact

Henyan also argues that the district court erred by granting Baglio's summary judgment motion with respect to her objections to Baglio's actions as attorney-in-fact,

9

which are focused on expenditures Baglio made before decedent's death using his Bremer Bank checking account and his credit card.[3]

The district court again rejected Henyan's objections primarily on the ground that the objections were untimely. The district court again relied on section 6.3.6 of the amended trust instrument and reasoned that the balance of the checking account was disclosed in the original final accounting and that "[t]he fact that specific transactions . . . were not disclosed . . . is not of consequence." We question whether the amended trust instrument was intended to preclude a beneficiary from objecting to an action taken by an attorney-in-fact for the grantor. We also question whether the final accounting actually disclosed the transactions to which Henyan objects. Nonetheless, the district court also rejected Henyan's objections to Baglio's actions as attorney-in-fact on an alternative ground. The district court reasoned that, "even if" the 90-day period did not apply, "summary judgment would still be proper under the circumstances" because Henyan did not have sufficient evidence to prove that Baglio breached her fiduciary duty or that she acted in bad faith.

---

[3]Henyan also contends that Baglio "abused her power as Decedent's attorney-in-fact after Decedent's death" by making purchases with decedent's Bremer Bank checking account and credit card. This contention is without a legal basis because, as a matter of law, Baglio's attorney-in-fact status terminated on decedent's death. *See* Minn. Stat. § 523.08 (2014). Henyan's brief identifies only a few specific expenditures after decedent's death, which were for utilities for decedent's condominium. Baglio was appointed personal representative of decedent's estate. "The powers of a personal representative relate back in time to give acts by the person appointed which are beneficial to the estate occurring prior to appointment the same effect as those occurring thereafter." Minn. Stat. § 524.3-701. The expenditures at issue surely were beneficial to decedent's estate. Henyan has not established that Baglio acted inappropriately in making those expenditures.

10

An attorney-in-fact shall exercise her authority "in the same manner as an ordinarily prudent person of discretion and intelligence would exercise in the management of the person's own affairs." Minn. Stat. § 523.21; *see also Erickson v. Van Web Equip. Co.*, 270 Minn. 42, 49, 132 N.W.2d 814, 819 (Minn. 1964). "The attorney-in-fact is personally liable to any person, including the principal, who is injured by an action taken by the attorney-in-fact in bad faith under the power of attorney . . . ." Minn. Stat. § 523.21.

In her principal brief, Henyan contends that Baglio breached her fiduciary duty by writing checks on decedent's Bremer Bank checking account on nine occasions. Specifically, Henyan states that Baglio wrote a check to herself for $1,200, a check to her husband for $343, and seven checks to "cash" that total $1,740. In deposition, Baglio testified that she wrote the first check because her father expressed a desire to make a gift to her in that amount. She testified that she wrote the second check to her husband to reimburse him for paying the license registration fees on her father's vehicle. And she testified that she used the cash derived from the remaining seven checks to make purchases specifically requested by her father.

Henyan also challenges a few instances in which Baglio used decedent's credit card to make purchases during his lifetime. Specifically, Henyan states that Baglio used a credit card to purchase an iPad as a gift from her father to herself, to purchase wine at a liquor store, to pay for meals with friends, and to purchase groceries. In deposition, Baglio testified that her father directed her to purchase the iPad as a gift for herself. She testified that she purchased the wine for the benefit of guests who visited her father's home during his final illness. She also testified that her father approved of her taking her friends out to

11

lunch because they had been helpful to her during his final illness.  And she testified that she purchased groceries for guests and family members who visited her father's home.

Henyan's examination of Baglio at her deposition did not effectively undermine her testimony concerning the purposes of the purchases she made with the Bremer Bank checking account and the credit card.  Likewise, Henyan did not offer any evidence that contradicts Baglio's deposition testimony.  Accordingly, the summary judgment record contains only Baglio's unrebutted testimony concerning her reasons for making those expenditures.  The undisputed facts lead to the conclusion that Baglio did not act in bad faith when making those expenditures.

Thus, the district court did not err by granting Baglio's motion for summary judgment with respect to Henyan's objections to Baglio's actions as attorney-in-fact.

**Affirmed.**